Curtis Wayne POPE, Jr., Appellant

v.

The STATE of Texas.

No. PD–0533–05.

Court of Criminal Appeals of Texas.

Nov. 15, 2006.

Wm. Reagan Wynn, Fort Worth, for Appellant.

Edward L. Wilkinson, Asst. Crim. D.A., Fort Worth, Matthew Paul, State's Attorney, Austin, for state.

## OPINION

COCHRAN, J., delivered the opinion of the Court, in which KELLER, P.J., and MEYERS, PRICE, WOMACK, KEASLER, HERVEY and HOLCOMB, JJ., joined.

This is a case of first impression concerning the attorney work-product doctrine.

Appellant was convicted of murder based, in part, upon his DNA being found at the crime scene. After the State's DNA experts were cross-examined about the accuracy of their DNA testing techniques and results, the State, on re-direct, questioned them about the identity and "eminent" qualifications of another expert, Robert Benjamin, who was "involved in the case." The State's experts also testified that they had forwarded their reports to Dr. Benjamin and that he did not request further DNA testing. Although the jury was not told that appellant had designated Dr. Benjamin as a possible testifying expert, the State argued that if Dr. Benjamin or any other expert disagreed with the State's DNA experts, appellant would have called that witness to testify.

Both at trial and on appeal appellant claimed that this testimony and argument violated the attorney work-product doctrine and this was constitutional error as it impinged upon his Sixth Amendment right to counsel.[1] The court of appeals found

---

1. Appellant's grounds for review state
   1. Does admission of evidence of (1) the identity of a non-testifying defense expert witness, (2) the qualifications of the non-testifying defense expert witness, and (3)

the fact that the non-testifying defense expert witness reviewed materials provided by the State's expert permit the jury to improperly infer that the non-testifying defense expert reviewed the State's expert's

that neither Dr. Benjamin's identity nor his qualifications were protected, but that testimony regarding Dr. Benjamin's failure to request additional testing "indirectly" violated appellant's work-product "privilege."[2] The court of appeals concluded, however, that the error was nonconstitutional and harmless.[3] We conclude that none of the testimony was protected by the work-product doctrine, and thus there was no error that affected appellant's Sixth Amendment right to counsel. We affirm the judgment of the court of appeals.

I.

Appellant was charged with the murder of Darrell North, who was found stabbed to death at his construction-site trailer. Mr. North had suffered over "50 distinct sharp force wounds" to his head, face, back, chest, shoulders, and torso. Suspicion focused on appellant who, along with Mr. North, failed to keep a scheduled meeting with a pool-construction customer on the evening of the murder. DNA tests tied blood found on the floor and furniture at the crime scene, as well as on the victim's pants, to appellant. The statistical probability of this DNA being that of another Caucasian male was one in 41.7 million.

After appellant was charged, the State filed a Motion for Discovery of Expert Witnesses asking for the name and address of any expert witnesses that the defense might call at trial. Appellant later filed a motion for independent examination of the DNA evidence and requested the

trial court to "enter an order permitting Robert Benjamin to review and examine all reports and testing already performed by William Watson for purposes of deoxyribonucleic acid (DNA) testing and comparisons," as well as independent testing "if necessary." The trial court granted appellant's motion. Less than a month later, appellant formally designated "Dr. Robert Benjamin with the University of North Texas Department of Biological Sciences" as a potential defense expert witness. The State then designated eleven potential expert witnesses. Several months later, the trial judge granted a joint request by the State and appellant to submit hair samples from the murder victim, appellant, and Donald Fortenberry, another possible suspect, as well as fingernail scrapings from the murder victim, for additional DNA testing. This additional DNA testing excluded Mr. Fortenberry, but included appellant.

Immediately before the State's first DNA expert testified at trial, appellant made a motion in limine to bar any mention of Dr. Benjamin because his existence as a potential defense witness was irrelevant. "I think it goes into work product. If he takes the stand, that's a different story." The trial judge granted this motion. However, appellant's cross-examination of William Watson attacked the validity of the DNA testing procedures and test interpretation. He suggested that (1) the PowerPlex 1.1 machine that Orchid Cellmark (formerly GeneScreen) used to "run the gel" was not as good as the ABI–310

work and concluded that it was correct, in violation of the Sixth Amendment right to counsel and the corollary work-product privilege?

2. Does improper admission of evidence indicating that a non-testifying defense expert reviewed the State's expert's work and did not request additional testing amount to a

violation of the Sixth Amendment right to counsel, or is it merely a violation of a non-Constitutional right?

2. *Pope v. State*, 161 S.W.3d 114, 121 (Tex. App.-Fort Worth 2004).

3. *Id.* at 121–23.

machine because it requires more "professional judgment" to interpret the results, and (2) Mr. Watson could not say with 100% certainty that the person who "ran the gel," Katherine Long, did it correctly and "she's not here."

Before beginning his re-direct examination, the prosecutor approached the bench and argued that appellant had opened the door to the existence and role of Dr. Benjamin as a defense expert:

> [I]t is the State's position that due to their vigorous cross-examination as to the accuracy and methodology and technique of Mr. Watson's analysis and subsequent opinions, that it has now become a relevant matter of redirect to demonstrate, first of all, that all of this witness's work papers, and well as those of Ms. King [the State's second expert witness], were sent to Dr. Benjamin for analysis and review, and that never at any time has their expert ever contacted these folks and requested any opportunity to discuss any alleged errors or mistakes in their work papers or protocol or secondly has there ever been any request for any additional testing of the samples that they have in fact done.

Defense counsel objected that he had not opened the door with his cross-examination and that any mention of Dr. Benjamin or his role in the case would violate the attorney work-product doctrine and appellant's due-process rights. Defense counsel argued that it was part of his strategy to keep Dr. Benjamin out of the courtroom to prevent the State from arguing that "this guy is teaching me," and that this "expert was appointed for them, and if there was anything incorrect about it, they could bring him in here and tell you about it, folks."

The trial court noted, "So if I don't allow it in, then at final argument I can hear the Defense standing up and saying, can you trust all of this evidence because it had all of these problems in it, so how is that fair to the State?" The court further noted that the State's expert had sent his lab reports directly to Dr. Benjamin and that appellant had the right to call his expert if he wished. After further discussion, the trial court ruled that the State could ask its expert "if he knows Dr. Benjamin, how he knows him, how long he's known him, . . . was this witness aware that Dr. Benjamin was involved in this case," and whether Dr. Benjamin had ever requested any further testing.

Mr. Watson then testified, over objection, that he knew Dr. Benjamin, who was "eminently qualified"; he had delivered his notes and work papers to Dr. Benjamin; and he was not requested by Dr. Benjamin, or anyone acting for him, to retest any of the work Mr. Watson had done.

Jamie King, the State's second expert, was also impeached with asserted deficiencies in the DNA testing process. She, too, then testified that she knew Dr. Benjamin and had taken a course from him. "I know he's used as a defense expert many times." She said that she sent him her bench notes and had e-mail exchanges with him. No one had asked her to retest any of the DNA material.

During closing argument, the State noted that the defense "attacked the DNA, and that's fine. Let them attack it." But, the State continued,

> The Defense under our constitution . . . has the right to issue subpoenas and use the power of the State and the government to compel people to appear. . . . They don't have to bring witnesses, but they can do so if it behooves them.
>
> And don't you know, don't forget this, if they had one person, one expert who knew anything about DNA and the testing procedures, they would have put

somebody on that witness stand to-day....

[Appellant's objection overruled]

And don't you know, Benjamin or any-body else, and Jamie testified, yes, all of these notes were sent to him. Now, do you think he just threw them in the trash? I think it's probably reasonable to conclude that perhaps he looked at them. And don't you know that if he had any quarrel whatsoever with the results these people at GeneScreen obtained, that he'd have decorated that witness stand and said, you can't believe anything.

But all you have, ladies and gentle-men, with regard to their challenge for the DNA is [defense counsel's] theories. That's all you have. You have no ex-perts who challenged them. It has gone unrefuted.

The jury convicted appellant and the court sentenced him to life imprisonment.

On appeal, appellant complained of the trial court's ruling and the State's argu-ment. In its analysis, the court of appeals first noted that "a testifying expert's iden-tity, once disclosed, is not work-product." [4] Second, it stated that "testimony regard-ing the witnesses' knowledge of Dr. Benja-min's qualifications, and the materials pro-vided to him, cannot be privileged because they do not constitute work-product of the defense." [5] Third, it stated that

> we believe that the testimony elicited by the State regarding Dr. Benjamin's fail-ure to request additional testing indi-rectly violated Pope's work-product priv-ilege because the testimony could have had the effect of disclosing Dr. Benja-min's mental impressions regarding the absence of a need for further tests.[6]

The court of appeals concluded, however, that this was nonconstitutional error and harmless under Rule 44.2(b).[7]

## II.

■■■ The scope of the attorney work-product doctrine is sometimes confused with that of the attorney-client privilege. The attorney-client privilege is an eviden-tiary privilege and protects against the compelled disclosure of confidential com-munications.[8] This privilege belongs to and protects the client.[9] The attorney work-product doctrine, while not a true evidentiary privilege, belongs to and pro-tects the attorney.[10] Its purpose is to

4. *Pope,* 161 S.W.3d at 120.

5. *Id.* at 121.

6. *Id.*

7. *Id.* at 121–23.

8. Tex.R. Evid. 503.

9. *See West v. Solito,* 563 S.W.2d 240, 245 (Tex.1978, orig. proceeding). The Texas Su-preme Court explained that

> the purpose of the attorney-client privilege is to promote the unrestrained communica-tion and contact between an attorney and client in all matters in which the attorney's professional advice or services are sought, without fear that these confidential commu-nications will be disclosed by the attorney,

voluntarily or involuntarily, in any legal proceeding.

*Id.; see also Austin v. State,* 934 S.W.2d 672, 673 (Tex.Crim.App.1996) (stating that the purpose of the privilege is to promote com-munications by protecting against the fear that confidences will later be revealed).

10. *See United States v. Nobles,* 422 U.S. 225, 238, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) (stating that "[a]t its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which [the attorney] can analyze and prepare his client's case"); *Washington v. State,* 822 S.W.2d 110, 115–16 (Tex.App.-Waco 1991) (explaining that "the work-product doctrine is designed for the benefit of the attorney"), *rev'd on other grounds,* 856 S.W.2d 184 (Tex. Crim.App.1993).

stimulate the production of information for trials, and it rewards an attorney's creative efforts by giving his work product a qualified privilege from being shared with others.[11] It is premised on the notion that an attorney should not be compelled to disclose the fruits of his labor to his adversary.[12] Under Texas civil rules, material that reflects the attorney's personal thought processes is "core work product" and receives absolute protection, while other materials, such as documents, reports, or memoranda compiled by the attorney or his agents and communications made in anticipation of litigation or trial are "other work product" and receive qualified protection.[13] While the work-product doctrine protects the communications of parties, attorneys, and agents, the underlying factual information is not protected.[14] For example, descriptions of potential witnesses and statements that would reveal whether the party had spoken to potential witnesses are not work product and are discoverable.[15] As Professor Dix has explained:

> if defense counsel's efforts do not create or enhance the substantive information, that information—or the form in which it is preserved—does not become protected work product.[16]

That is, facts that are divulged by or exist independent of the attorney or his agents are not protected, but statements or docu-

**11.** *See Occidental Chem. Corp. v. Banales,* 907 S.W.2d 488, 490 (Tex.1995, orig. proceeding) ("The attorney work product privilege protects two related but different concepts. First, the privilege protects the attorney's thought process, which includes strategy decisions and issue formulation, and notes or writing evincing those mental processes. Second, the privilege protects the mechanical compilation of information to the extent such compilation reveals the attorney's thought processes"). *See generally,* Edward J. Imwinkelried, *The Applicability of the Attorney–Client Privilege to Non–Testifying Experts: Reestablishing the Boundaries Between the Attorney–Client Privilege and the Work Product Protection,* 68 WASH. U. L.Q. 19, 37–38 (1990).

**12.** The Supreme Court explained the rationale for the doctrine in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947):

> Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Id.* at 511, 67 S.Ct. 385; *see also Carmona v. State,* 941 S.W.2d 949, 953 (Tex.Crim.App.

1997) ("The work-product doctrine is designed for the benefit of the lawyer by protecting the lawyer from being compelled to disclose 'the fruits of his labor to his adversary' ").

**13.** *See* TEX.R. CIV. P. 192.5; *see also National Tank Co. v. Brotherton,* 851 S.W.2d 193, 200 (Tex.1993) (noting that the common law work-product doctrine had shielded from discovery "specific documents, reports, communications, memoranda, mental impressions, conclusions, opinions, or legal theories, prepared and assembled [by an attorney] in actual anticipation of litigation or for trial").

**14.** *See Axelson, Inc. v. McIlhany,* 798 S.W.2d 550, 554 n. 8 (Tex.1990, orig. proceeding) (noting that the work-product doctrine "protects only the mental impressions, opinions, and conclusions of the lawyer and not the facts"); *Leede Oil & Gas, Inc. v. McCorkle,* 789 S.W.2d 686, 687 (Tex.App.-Houston [1st Dist.] 1990, orig. proceeding) (attorney's notes that were mere "neutral recitals of facts" and contained no commentary by the attorney were not covered by the work-product privilege).

**15.** *City of Denison v. Grisham,* 716 S.W.2d 121, 123–24 (Tex.App.-Dallas 1986, orig. proceeding).

**16.** 42 GEORGE E. DIX & ROBERT O. DAWSON, CRIMINAL PRACTICE AND PROCEDURE § 22.14 at 13 (2d ed.2001).

ments that set out their thoughts concerning the significance of these facts or the strategic conclusions that the attorney or his agents draw from them may well be protected. Thus, material prepared by a consulting expert appointed by the trial court to assist the defense in developing strategies and theories is protected by the work-product doctrine when that material reflects the expert's thoughts regarding the strength and weaknesses of a defense theory.[17]

Under Texas civil law, the world of experts is divided into two parts: consulting experts and testifying experts.[18] "The identity, mental impressions, and opinions of a consulting expert whose mental impressions and opinions have not been reviewed by a testifying expert are not discoverable."[19] The Texas Supreme Court

has stated that "[t]he policy behind the consulting expert privilege is to encourage parties to seek expert advice in evaluating their case and to prevent a party from receiving undue benefit from an adversary's efforts and diligence."[20] But that protection "is intended to be only 'a shield to prevent a litigant from taking undue advantage of his adversary's industry and effort, not a sword to be used to thwart justice or to defeat the salutary object' of discovery."[21]

If a party might call an expert whom he has consulted as a witness at trial and the opposing side has requested designation of any potential experts, the party must designate that person as a testifying expert. A party who has designated a person as a potential testifying expert must be willing

17. *Id.* (citing *Skinner v. State*, 956 S.W.2d 532, 540 (Tex.Crim.App.1997)).

18. The same is, to a large extent, true in the federal system. *See, e.g., House v. Combined Ins. Co. of Am.*, 168 F.R.D. 236, 245 (N.D.Iowa 1996) ("whether the witness has been designated as an expert expected to testify at trial pursuant to FED.R.CIV.P. 26(b)(4)(A) is a very significant difference from the situation in which an expert has merely been consulted by a party, but never designated as likely to testify at trial"). As noted in *House*,

Parties should be encouraged to consult experts to formulate their own cases, to discard those experts for any reason, and to place them beyond the reach of an opposing party, *if* they have never indicated an intention to use the expert at trial. Such a consulted-but-never-designated expert might properly be considered to fall under the work product doctrine that protects matters prepared in anticipation of litigation. . . .

However, once an expert is designated, the expert is recognized as presenting part of the common body of discoverable, and generally admissible, information and testimony available to all parties.

*Id.* (citations omitted).

FED.R.CIV.P. 26(b)(4) refines this distinction even more. It divides experts into four

classes and deals separately with each. These categories are: (1) experts a party expects to use at trial; (2) experts retained or specially employed in anticipation of litigation or preparation for trial but not expected to be used at trial; (3) experts informally consulted in preparation for trial but not retained; and (4) experts whose information was not acquired in preparation for trial. *See* 8 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2029, at 428–29 (2d ed.1994).

19. TEX.R. CIV. P. 192.3(e); *see In re City of Georgetown*, 53 S.W.3d 328, 334 (Tex.2001) ("The rules of civil procedure delineate a category for consulting experts whose mental impressions and opinions have not been reviewed by a testifying expert. The rules expressly provide that a party is not required to disclose the identity, mental impressions, and opinions of consulting experts.") (internal citation omitted).

20. *Tom L. Scott, Inc. v. McIlhany*, 798 S.W.2d 556, 559 (Tex.1990, orig. proceeding).

21. *Id.* (holding that a settling party could not "assign" its experts to the opposing party, who then redesignated the experts from "testifying" experts to "consulting-only" experts).

to divulge his name, address, telephone number, resume, and the subject matter on which he will testify.[22] Also subject to discovery in civil cases are "the facts known by the expert that relate to or form the basis of the expert's mental impressions and opinions formed or made in connection with the case in which the discovery is sought, regardless of when and how the factual information was acquired;"[23] as well as "the expert's mental impressions and opinions formed or made in connection with the case in which discovery is sought, and any methods used to derive them[.]"[24] Thus, in civil cases, there is no work-product protection for that potential testifying expert's data, tests, reports, or opinions.

■ The nature and extent of the work-product doctrine in Texas criminal cases is considerably less developed than it is in civil proceedings because there is very little pre-trial discovery in criminal cases.[25] However, article 39.14(b) of the Texas Code of Criminal Procedure was amended in 1999 to provide for limited reciprocal discovery of the opposing side's potential expert witnesses. That provision, in pertinent part, states:

> On motion of a party and on notice to the other parties, the court in which an action is pending may order one or more of the other parties to disclose to the party making the motion the name and address of each person the other party may use at trial to present evidence under Rules 702, 703, and 705, Texas Rules of Evidence.[26]

The rule explicitly refers to any expert that the party "may use" at trial; it is not limited to those that he actually "does use."[27] Thus, once a party designates a particular person as an expert that he may use as a witness at trial, that person is no longer a "consulting" expert, he is a "testifying" expert, and the opposing party, whether the State or the defendant, may seek further information from or about him for use at trial.[28]

**22.** Tex.R. Civ. P. 192.3(e)(1), (2), (7).

**23.** *Id.* at 192.3(e)(3).

**24.** *Id.* at 192.3(e)(4).

**25.** *See Carmona v. State,* 941 S.W.2d 949, 953 (Tex.Crim.App.1997).

**26.** Tex.Code Crim. Proc. art. 39.14(b). The pertinent phrase, "each person the other party may use at trial to present evidence under Rules 702, 703, or 705" is almost exactly the same wording as is used in Rule 26(a)(2)(A) of the Federal Rules of Civil Procedure ("any person who may be used at trial to present evidence under Rules 702, 703, or 705"). We assume that the Texas Legislature, by following the wording of the federal rule, also intended to follow the federal interpretation of that wording. For a thorough discussion of the federal civil rule, the history of the work-product doctrine, its scope and applicability to expert witnesses, see Wright & Miller, *supra* note 18, §§ 2021–2033.

**27.** *See* Stephen D. Easton, *"Red Rover, Red Rover, Send that Expert Right Over": Clearing the Way for Parties to Introduce the Testimony of Their Opponents' Expert Witnesses,* 55 SMU L. Rev. 1427, 1461 (2002) ("the Rule 26(a)(2)(A) disclosure is not a statement that an attorney will call an expert as a witness at trial. Instead, this disclosure is a required statement that the expert might be called as a witness at trial").

**28.** *See, e.g., Doe v. Eli Lilly & Co.,* 99 F.R.D. 126 (D.D.C.1983). In the context of expert witnesses, the court stated,

> As a general proposition, ... no party to litigation has anything resembling a proprietary right to any witness's evidence. Absent a privilege no party is entitled to restrict an opponent's access to a witness, however partial or important to him, by insisting upon some notion of allegiance. Even an expert whose knowledge has been purchased cannot be silenced by the party who is paying him on that ground alone. Unless impeded by privilege an adversary

But what happens when the party who has designated a particular person as an expert later decides that the expert's opinions and testimony could do its side more harm than good? This is a frequent problem in civil proceedings and has led to the formulation of an entire body of legal disputes, often called "Red Rover" issues.[29] The first question is whether the designating party can "de-disclose" the expert "by issuing some type of declaration that she will not use the expert as a witness at trial." [30] The second question is what consequence, if any, this de-designation warrants at trial.[31] Some courts have held that, absent "exceptional circumstances," the opposing party may not call the de-designated expert, even though the expert had formed his opinions, given his deposition, written his report, etc., before the act of de-designation.[32] Other courts have held that there is no privilege protecting a retained expert from being called by the opposing party.[33] Numerous criminal cases have held that calling an expert witness originally designated by the defense

---

may inquire, in advance of trial, by any lawful manner to learn what any witness knows....

*Id.* at 128 (citations omitted).

Article 39.14 of the Code of Criminal Procedure does not provide for mandatory depositions of experts, interrogatories, disclosure of reports or the whole host of other discovery mechanisms available in civil proceedings. That failure, however, does not imply that the work-product doctrine necessarily continues to protect otherwise discoverable materials once the State or defendant designates an expert witness. As noted by Professor Easton, "[a]fter an expert has been disclosed by the retaining attorney, muzzling that witness may be unfair to the opposing party for several reasons," one of which is that "a party ordinarily should be able to count on the availability of the testimony of a person who has been declared to be a potential witness at trial." Easton, *supra* note 27 at 1478.

Article 39.14(a) provides for limited pretrial discovery by the defendant of certain material in the State's possession. This article explicitly protects "the work product of [the State's] counsel in the case and their investigators and their notes or report." Presumably, the trial court concluded that written reports by those persons who have been formally designated as a potential expert witness are not protected by the work-product doctrine. Otherwise, the trial court would not have ordered the State to send its experts' written notes and DNA reports to Dr. Benjamin.

**29.** See generally, Easton, *supra* note 27. The term "Red Rover" refers to the children's playground game in which one team "calls over" a member of the opposing team who must try to break through the hand-holding members of the calling team. If that person cannot break through the human chain, he becomes a member of the calling team. *Id.* at 1437 n. 49.

**30.** *Compare id.* at 1438–39 & n. 55 (collecting cases) *with id.* at 1463 (noting that, under the federal rules of civil procedure, there is no mechanism to "de-designate" a previously designated expert witness and arguing that there should not be). Several Texas civil cases have held that a "testifying expert [may] be 'de-designated' so long as it is not part of 'a bargain between adversaries to suppress testimony' or for some other improper purposes." *In re Doctor's Hosp. of Laredo, Ltd.,* 2 S.W.3d 504, 506 (Tex.App.-San Antonio 1999) (quoting *Castellanos v. Littlejohn,* 945 S.W.2d 236, 240 (Tex.App.-San Antonio 1997, orig. proceeding)).

**31.** Easton, *supra* note 27 at 1439–47.

**32.** *See Durflinger v. Artiles,* 727 F.2d 888, 891 (10th Cir.1984); *see also In re Shell Oil Refinery,* 132 F.R.D. 437, 440–41 (E.D.La.1990) (suggesting that if a party notifies its opponent prior to the deadline for designation of expert witnesses that a particular expert will not be testifying, that party may designate him as a non-testifying or "consulting" expert even though his initial expert reports had been disclosed to the opposing side).

**33.** *See, e.g., Knoff v. American Crystal Sugar Co.,* 380 N.W.2d 313, 319–21 (N.D.1986); *Granger v. Wisner,* 134 Ariz. 377, 656 P.2d 1238, 1240 (1982).

does not violate the Sixth Amendment.[34] One court noted that this position "is a minority one, although it has the strong endorsement of a leading expert in the field of evidence."[35] A third group of courts have held that the trial judge may use his discretion, balancing probative value against the risk of unfair prejudice under Rule 403, to decide whether the opposing party may call, depose, or otherwise use an expert originally retained and designated by the other side.[36]

Courts that have permitted some use at trial of the opponent's de-designated expert have frequently disallowed any explicit mention that the expert was originally retained by the opponent.[37] They have noted that this information creates a danger that the jury will draw two unwarranted and improper conclusions. First, it could create the impression that the opposing party is suppressing evidence that it had an obligation to present.[38] Second, the jury might believe that the "Red Rover" expert is more credible than other experts because he will "tell the truth" regardless of the fact that he was originally retained and paid by the opposing party. Accordingly, some courts have held that the information concerning who originally hired an expert witness is either irrelevant under Rule 401 or inadmissible under Rule

**34.** *See, e.g., Noggle v. Marshall,* 706 F.2d 1408, 1414–17 (6th Cir.1983) (noting that no Fifth or Sixth Amendment violation or "violation of a constitutionally mandated attorney-psychiatrist-client privilege occurred when the state called as its witness a defense-retained psychiatrist" in rebuttal of defendant's insanity defense); *State v. Riddle,* 330 Or. 471, 8 P.3d 980, 990 (2000) (holding that there is no attorney-client privilege, work-product doctrine privilege, or state precedent "that prevents an expert whom a litigant has employed to investigate a factual problem from testifying for the other side as to the expert's thoughts and conclusions that are segregated from confidential communications"; stating that the State was not barred from calling a defense-employed accident reconstruction expert as its witness as long as it did not elicit any confidential communications or work product).

**35.** *Riddle,* 8 P.3d at 989 n. 5 (citing Edward J. Imwinkelried, *The Applicability of the Attorney–Client Privilege to Non–Testifying Experts: Reestablishing the Boundaries between the Attorney–Client Privilege and the Work Product Protection,* 68 WASH. U.L. Q., 19, 28–30 (1990)).

**36.** *See, e.g., House v. Combined Ins. Co. of Am.,* 168 F.R.D. 236, 245–46 (N.D.Iowa 1996); *White v. Vanderbilt Univ.,* 21 S.W.3d 215, 224 (Tenn.Ct.App.1999) (setting out various Rule 403 factors, balancing them and holding that plaintiff should have been permitted to use defendant hospital's de-designated expert's deposition at trial, but noting that proponent must first remove any reference to the fact that the expert had been initially consulted by the defendant).

**37.** See *Peterson v. Willie,* 81 F.3d 1033, 1037–38 (11th Cir.1996); *House,* 168 F.R.D. at 248; *Rubel v. Eli Lilly & Co.,* 160 F.R.D. 458, 460 (S.D.N.Y.1995); *Granger v. Wisner,* 656 P.2d at 1242; *General Motors Corp. v. Jackson,* 636 So.2d 310, 314–15 (Miss.1994); *Seeber v. Howlette,* 255 Neb. 561, 586 N.W.2d 445, 451 (1998). *But see Cogdell v. Brown,* 220 N.J.Super. 330, 531 A.2d 1379, 1382 (Law.Div. 1987); *Fenlon v. Thayer,* 127 N.H. 702, 506 A.2d 319, 323 (1986) (stating that the identity of the party who originally retained an expert is material to the weight and credibility of the expert's testimony).

**38.** *Granger v. Wisner,* 656 P.2d at 1242–43 (allowing the defendant to elicit, on direct examination, that the plaintiff had originally retained the expert "would only serve to unfairly prejudice the plaintiff. Jurors unfamiliar with the role of counsel in adversary proceedings might well assume that plaintiff's counsel had suppressed evidence which he had an obligation to offer. Such a reaction could destroy counsel's credibility in the eyes of the jury"); *see* 8 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2032, at 447 (2d ed.1994) (calling this information "explosive").

403.[39]

With this general background, we turn to the situation in the present case.

## III.

■ Here, appellant first requested that all of the DNA testing results and reports conducted by the State's experts be sent to Dr. Benjamin. The trial court ordered the State to do so and the reports were sent to Dr. Benjamin. Second, appellant formally designated Dr. Benjamin as a potential testifying expert under article 39.14(b). Third, it was only at trial, immediately before the State's first expert witness testified, that appellant requested that the prosecution be prohibited from mentioning Dr. Benjamin, claiming that the mention of his name as a designated expert witness would violate the work-product doctrine. The trial judge granted appellant's motion in limine. Fourth, when appellant cross-examined the State's first expert about his testing procedures, the testing equipment that he used, and the reliability of his test results, the trial judge concluded that the defense had opened the door to allow the State to ask its expert about Dr. Benjamin,

his qualifications, his involvement in this case,[40] and the fact that, although the State's expert had sent Dr. Benjamin a copy of his reports, Dr. Benjamin had never requested any retesting.

■ Appellant claims,

Allowing the State to introduce evidence establishing that Dr. Benjamin is an eminently qualified defense expert who was provided with all of the State's DNA testing material was inadmissible for the same reason that evidence of his failure to request additional testing was: it could have no possible relevance other than to allow the jury to conclude that Dr. Benjamin reviewed the State's DNA testing and concluded it was accurate.

But Dr. Benjamin was, at all times, a formally designated expert witness for the defense. He was never "de-designated." His identity and qualifications were not protected by any work-product privilege.[41] Appellant had publicly filed a formal motion requesting that all expert reports be sent to Dr. Benjamin for his review. Information in the public domain is not protected by the work-product doctrine.[42] As

39. *See State v. Hamlet*, 133 Wash.2d 314, 944 P.2d 1026, 1031–33 (1997) (holding that State could call expert who was originally retained by defendant in preparation of diminished capacity defense, but it was error, though harmless, to permit him to testify that he was retained by the defendant); *State v. Wilkinson–Snowden–McGehee, Inc.*, 571 S.W.2d 842, 843 (Tenn.Ct.App.1978); *Agron v. Trustees of Columbia Univ.*, 176 F.R.D. 445, 450–53 (S.D.N.Y.1997) (denying plaintiff student's motion in limine to preclude the testimony of an expert witness for the defendant university, but prohibiting any reference to his original retention by the plaintiff and requiring that copies of his report be redacted to eliminate any such references); *Dovel v. Walker Manuf.*, 174 F.R.D. 649 (D.C.Neb.1996); *see also* Imwinkelried, *supra* note 35 at 47 (noting that, in Red Rover situations, "the trial judge could admonish the prosecutor and expert to refrain from any mention of the defense's consulta-

tion with the witness" under Rule 403 if "the jury is likely to ascribe too much significance to the defense's earlier consultation with this prosecution witness").

40. The trial judge should be complimented for being remarkably fast on his feet in minimizing the risk of prejudice under Rule 403 by prohibiting the State from explicitly stating that Dr. Benjamin had been retained by appellant.

41. *See* Tex.R. Civ. P. 192.3(e); Fed.R.Civ.P. 26(a)(2)(A); *see also House v. Combined Ins. Co. of Am.*, 168 F.R.D. 236, 245 (N.D.Iowa 1996); *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 225 (Tenn.Ct.App.1999).

42. *See Carmona v. State*, 941 S.W.2d 949, 953–54 (Tex.Crim.App.1997) (discussing waiver of attorney-client privilege by public disclosure).

a part of his Motion for Independent Examination of DNA Evidence, appellant also requested an "independent examination by an expert of Defendant's own choice of the pertinent evidence" and "if necessary, to arrange for a lab of the Defendant's own choice, to examine said evidence for the purposes" of additional DNA testing and comparisons. This motion was granted in its entirety. The contents of that motion, granted in open court by the trial judge, are not protected by the work-product doctrine.[43] The work-product doctrine "is intended to protect and to act as a limitation upon pretrial discovery of a lawyer's strategies, legal theories, and mental impressions," [44] but information that the lawyer himself puts into the public domain via a formally filed legal motion can hardly be thought of as a secret trial strategy.

■ Finally, the fact that the State's experts did or did not receive a request from any person to retest their samples or send samples to an independent lab for retesting by someone else is not covered by the work-product doctrine.[45] This is a fact that is within the personal knowledge of the State's experts.[46] Whether someone—anyone—called them, wrote to them, or otherwise communicated such a request to them could not be, by any stretch of the imagination, the work product of the defendant's attorney.[47] The State's experts are not agents of the defense attorney nor are they agents of Dr. Benjamin. The fact that neither Dr. Benjamin nor anyone else requested additional testing is not an instance of the State " 'leaching' case preparation information from" its adversary.[48]

43. *Id.*

44. *Morris v. State*, 59 Md.App. 659, 477 A.2d 1206, 1211 (1984). Put more colorfully, the work-product doctrine operates primarily to protect against pretrial discovery, on the basis that each litigant should be expected to prepare its own case and courts should "discourage lazy or unscrupulous lawyers from trying to cut case-preparation corners by leaching basic information or valuable opinions from experts retained by their opponents." *Brown v. Ringstad*, 142 F.R.D. 461, 465 (S.D.Iowa 1992).

45. *See, e.g., Morris*, 477 A.2d at 1211 (stating that "[t]here is a distinction to be made, however, between the disclosure of confidential communications whether made to an attorney or to an agent consulted by the attorney and information gained by objective scientific analysis conducted by experts, no matter by whom employed").

46. Similarly, Dr. Benjamin's "eminent" qualifications and professional standing were facts known to the State's experts—they were, after all, his former students—well before defense counsel retained him as a potential expert witness. And Dr. Benjamin's professional credentials existed independent of defense counsel's act of retaining him or any work-product strategy or conclusions that might have been developed on appellant's behalf. The only issue that the trial court, court of appeals, or this Court is asked to decide is whether Dr. Benjamin's existence and qualifications are protected by the work-product doctrine or the Sixth Amendment right to counsel. Whether the trial court might have considered the validity of some other, unrelated objection at trial is not before us because such an objection was never made.

47. Appellant states that "[t]here is no doubt that Dr. Benjamin's 'conclusions were the work product of defense counsel and would never have been provided to the prosecutor.' *See Taylor v. State*, 939 S.W.2d 148, 152 (Tex. Crim.App.1996)." But *Taylor* was decided before the legislature enacted the reciprocal-discovery statute. We need not decide, in this case, what effect, if any, that statute would have upon our previous opinions dealing with the work-product doctrine as it applies to designated experts.

48. *Dovel v. Walker Manuf.*, 174 F.R.D. 649 (D.C.Neb.1996) (allowing plaintiff to call her former physician, who had previously been retained by the defendant to perform an independent examination and prepare an expert report, as an expert witness at trial).

The court of appeals concluded that Dr. Benjamin's failure to request additional testing "indirectly" violated the work-product doctrine because the jury could have inferred that Dr. Benjamin concluded that the original testing was accurate or he would have wanted to do his own.[49] But this proves too much. It is always a possible inference that an expert who could request additional testing but does not do so has concluded that additional testing is unnecessary. And that inference might lead the jury to discern the expert's or the retaining attorney's "mental impressions" about the need for retesting.[50] Similarly, an attorney who fails to call an available eyewitness at trial might lead the jury to discern the attorney's "mental impression" that the uncalled witness would testify unfavorably. Nonetheless, a party may always comment on the fact that the opponent failed to call an available witness and then argue "Don't you know, if Mr. X had anything favorable to say, my opponent would have called him."[51] And this Court has already held that the State may comment upon the defendant's failure to call a DNA expert when DNA evidence was offered by the State's expert.[52]

▇▇▇ Juries are always entitled to draw reasonable inferences from known, unprivileged facts, even though those inferences may have the effect of indirectly disclosing an attorney's (or his agent's) mental impressions. What the work-product doctrine protects is the production of material—documents, e-mails, letters, disclosure of conversations, and so forth—and statements that set out an attorney's litigation strategy or opinions concerning the result of his investigation or that of his agents. It does not prevent the factfinder from making reasonable inferences from known facts.

Appellant also argues that public-policy concerns should forbid the State from mentioning the existence of his expert until and unless he calls that witness to testify at trial. He argues that a rule that permits the State to comment on the existence of such an expert and his failure to

**49.** *Pope*, 161 S.W.3d at 121.

**50.** Indeed, the court of appeals appears to have recognized this fact as it noted that appellant's

> assertion that the jury could have only come to the conclusion that the defense's expert agreed with the State's experts is a logical conclusion that the jury could have reached from admissible evidence; that is, there was a DNA expert who reviewed the state's materials but was not called as a witness by the defendant.

161 S.W.3d at 122.

**51.** *See Patrick v. State*, 906 S.W.2d 481, 491 (Tex.Crim.App.1995) (argument that points to a defendant's failure to produce evidence other than his own testimony is proper); *Caron v. State*, 162 S.W.3d 614, 618 (Tex.App.-Houston [14th Dist.] 2005, pet. ref'd) (prosecutor may comment on defendant's failure to present evidence; "if there is something out there that is going to exonerate you, you want to make it known" was proper argument); *Torres v. State*, 979 S.W.2d 668, 673–74 (Tex. App.-San Antonio 1998, no pet.) (prosecutor could comment on defendant's failure to call a defense expert).

**52.** *Jackson v. State*, 17 S.W.3d 664, 674 (Tex. Crim.App.2000) (stating that prosecutor's argument that "the defense would have called its [DNA] expert to the stand if it had seriously disputed the State's evidence" did not shift the burden of proof to the defense and was a permissible "comment on the defendant's failure to produce witnesses and evidence" because it did "not fault the defendant for exercising his right not to testify"); *see also Faison v. State*, 59 S.W.3d 230, 243 (Tex.App.-Tyler 2001, pet. ref'd) (prosecutor's argument—that it was a reasonable deduction from the evidence that the defense did not present its own expert testimony about DNA testing because its expert had reached the same results as had the State's expert—upheld as a reasonable deduction from the evidence).

contradict the State's experts will inevitably discourage defense attorneys from fully investigating the facts of a case pretrial and that, in turn, would violate the defendant's right to effective assistance of counsel under the Sixth Amendment.[53] Once again, this argument proves too much. There is a simple solution: investigate first, consult second,[54] designate third. The designation of a potential expert witness [55] under article 39.14(b) is an act similar to crossing the Rubicon in that it may waive many of the protections otherwise provided by the work-product doctrine, although it will not waive any confidential communications under the attorney-client privilege.

In sum, the trial judge in this case did not abuse his discretion in these Rule 403 rulings because the prosecutor's questions did not call for any disclosure of protected attorney work-product. The careful trial judge prohibited any explicit mention that Dr. Benjamin had been retained by appellant, a ruling that minimized the risk of any possible "Red Rover" unfair prejudice. And the fact that neither Dr. Benjamin nor anyone else had requested additional DNA testing is a simple fact known to the State's experts that is both relevant under Rule 401 and non-prejudicial under Rule 403. Finding no attorney-work product error, we affirm the judgment of the court of appeals.

JOHNSON, J., filed a concurring opinion.

---

53. Appellant's Brief at 14–15.

54. *See, e.g., Williams v. State*, 958 S.W.2d 186, 192–94 (Tex.Crim.App.1997) (defendant is entitled to make an *ex parte* motion for expert assistance under *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) to protect work product and defensive strategy).

JOHNSON, J., filed a concurring opinion.

I concur in the judgment of this Court, but not its reasoning. It is permissible to argue to the jury that the defendant did not present witnesses to contradict testimony offered by the state. It is not permissible to select a potential, but uncalled, witness such as Dr. Benjamin, tout his knowledge, experience, and standing among his colleagues and then argue, solely because the defendant did not call him as a witness (a circumstance that could have many causes), that even that eminent scholar did not dispute the state's evidence. Such tactics constitute bolstering of the testimony of the state's witnesses. The trial court erred in admitting such testimony and in failing to curtail the state's argument about it. The court of appeals was correct in finding error and that the error was statutory and harmless. TEX.R.APP. P. 44.2(b). I would affirm the judgment of the court of appeals and its reasoning.

---

55. Other acts, such as a formal request that certain materials in the State's possession be shown to or shared with a particular expert, will have the same effect of publicly disclosing the existence of an expert who is more than a consultant, but less than a formally designated expert witness.