In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-09-00071-CR


____________________



BILLY RAY STEWART a/k/a BILLY R. STEWART, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 252nd District Court


Jefferson County, Texas


Trial Cause No. 90678






 MEMORANDUM OPINION


 A jury found Billy Ray Stewart a/k/a Billy R. Stewart guilty of aggravated sexual
assault of a child, found the State's enhancement allegations to be true, and assessed
Stewart's punishment as confinement for life. See Tex. Pen. Code Ann. § 22.021 (Vernon
Supp. 2008). On appeal, Stewart raises two issues. The first issue complains of error in the
State's closing argument, and the second contends the trial court improperly admitted
evidence in the punishment phase. We affirm. 

Background


 The child testified at trial that Stewart molested her. She was seven at the time of the
offense and twelve at the time of trial. The molestation involved penetration and oral sex. 
When Stewart finished, he cleaned her up, took her home, and instructed her not to tell
anyone. The child, however, told her mother, who immediately called the police. The police
took the child to the hospital where she had an examination by a sexual assault nurse
examiner ("SANE").

Issue One: Closing Arguments


 In issue one, Stewart argues that the State impermissibly shifted the burden of proof
to him in its closing argument by asserting that the defense could have tested certain swabs
that were collected by the SANE nurse from the child. The State maintains that its closing
argument was a proper response to defense counsel's cross examination of Tammy LeBleu,
a forensic analyst for the Jefferson County Regional Crime Lab at the time of the offense and
in response to defense counsel's closing argument regarding LeBleu's testimony.

 As the Texas Court of Criminal Appeals explained, there are four areas of proper jury
argument: "(1) summation of the evidence presented at trial, (2) reasonable deduction drawn
from that evidence, (3) answer to the opposing counsel's argument, or (4) a plea for law
enforcement." Jackson v. State, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000) (citing 
McFarland v. State, 845 S.W.2d 824, 844 (Tex. Crim. App. 1992)). "To constitute reversible
error, the argument must be manifestly improper or inject new, harmful facts into the case." 
Id. 

LeBleu's Testimony


 First, we note the relevant portions of LeBleu's testimony. LeBleu testified that she
analyzed certain evidence related to the offense. Included in her analysis was the sexual
assault kit, where she "found a presumptive test of semen on the debris collection swab." 
She explained that semen could have been present on the swab in a small amount but that her
office did not perform any tests to confirm its presence because of the difficulty in testing
such a small amount. LeBleu testified that she sent three items for DNA testing: 1) cuttings
from the child's skirt, 2) blood samples taken from Stewart, and 3) a buccal swab from the
child. (1) The cuttings from the child's skirt had spots of semen in an amount sufficient for
DNA testing.

 On cross examination, defense counsel asked LeBleu whether semen was found on
the child's panties. LeBleu testified that there were no panties in the clothing sent to her but
that she had examined the child's skirt and swimsuit. (2) Defense counsel also questioned
LeBleu about why she did not request DNA tests on the debris swab that tested
presumptively positive for semen. LeBleu explained that she did not test that item because
the sample was small "and [she] didn't want to destroy all of it to confirm it. [She] wanted
to make sure there was evidence there in case they wanted to do something else." LeBleu
stated, "If they wanted DNA, then they could do that. If I try to confirm it, I would use it all
up."

Defense's Closing Argument


 In closing, defense counsel argued as follows:

 Then they bring in their lab person who says there [were] some
swabs-remember the swabs, the debris swabs? They had a preliminary
presumptive test for spermatozoa. That would have locked this deal up. Send
that to the DNA lab. Let's test it; right? Well, I didn't want to do the other
test[,] because that would use it all up. I didn't send it to DNA because I
wanted to preserve it to test it. If it's on a piece of clothing, I can understand
you saying, maybe I shouldn't test it because it could get on a piece of clothing
anyway. It could fall, drop it on something. You can sit on it. It could get on
it anyway. But the stuff on your skin-that's what he's accused of touching,
that's what he's accused of penetrating, and they don't even test the swabs? 


 . . . .


 Reasonable doubt. Can you believe all this beyond a reasonable doubt with all
the mistakes, with all the miscues, with all the assumptions . . . . Where are the
panties? Where are the tests on the swabs that come from the skin?
Reasonable doubt. It's everywhere.





State's Closing Argument



 Stewart complains about the following portion of the State's argument:

 State: As far as the swabbings that [Defense Counsel] talked about, well, they
could have had them tested, too, if they wanted to. I submit to you the
reason why they did not is because they know- 


 Defense: I'm going to object, Your Honor, . . . that's trying to shift the burden of
proof to the Defense. There's no burden on the Defense to prove
anything.


 Court: It's overruled.


 State: But they didn't. They didn't bother to have them tested because it's
going to show the same thing the other DNA testing showed. 1 in 94.3
quadrillion.


 In support of Stewart's contention that the State's closing argument impermissibly
shifted the burden of proof, Stewart cites Cook v. State, 702 S.W.2d 597 (Tex. Crim. App.
1984). Cook involves a comment about a defendant's failure to testify. Id. at 600. "'If the
remark complained of called the jury's attention to the absence of evidence that only the
testimony from the appellant could supply, the conviction must be reversed.'" Id. (quoting
Johnson v. State, 611 S.W.2d 649, 650 (Tex. Crim. App. 1981)). 

 In the case before us, however, the prosecutor's comment did not involve testimony
from Stewart. Instead, the comment involved Stewart's failure to produce evidence other
than his own testimony. During jury argument, the State may comment on defendant's
failure to present evidence in his favor. See Pope v. State, 207 S.W.3d 352, 365 (Tex. Crim.
App. 2006) (collecting cases); Jackson, 17 S.W.3d at 674; Patrick v. State, 906 S.W.2d 481,
491 (Tex. Crim. App. 1995). We conclude that the prosecutor's closing argument was a
response to the defense's assertions about the failure to conduct certain DNA tests and was
not manifestly improper. See Jackson, 17 S.W.3d at 673. We find that the prosecutor's
comments did not impermissibly shift the burden of proof to the defense. Issue one is
overruled. Issue Two: Admission of Penitentiary Packets



 In issue two, Stewart contends the trial court improperly admitted his penitentiary 
packets ("pen packets") into evidence during the punishment phase. For enhancement
purposes, the State introduced three pen packets as proof of Stewart's three prior convictions. 
Stewart argues that admission of the pen packets was improper because the judgments
contained in them did not have his thumbprint as required by the Texas Code of Criminal
Procedure. See Tex. Code Crim. Proc. Ann. art. 38.33, § 1 (Vernon 2005) ("The court shall
order that a defendant who is convicted of a felony or a misdemeanor offense that is
punishable by confinement in jail have a thumbprint of the defendant's right thumb rolled
legibly on the judgment or the docket sheet in the case.").

 "To establish that a defendant has been convicted of a prior offense, the State must
prove beyond a reasonable doubt that (1) a prior conviction exists, and (2) the defendant is
linked to that conviction. No specific document or mode of proof is required to prove these
two elements." Flowers v. State, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007) (footnote
omitted). The State may prove both of these elements in a number of ways, including
documentary proof that contains sufficient information to establish both the existence of a
prior conviction and the defendant's identity as the person convicted. Id. at 921-22.

 Pen packets that are certified by the Texas Department of Criminal Justice are self-authenticated for purposes of Rules 901 and 902 of the Texas Rules of Evidence. Tex. Code 
Crim. Proc. Ann. art. 42.09, § 8(b) (Vernon Supp. 2008). Stewart's pen packets contained
certifications from the records custodian for the Texas Department of Criminal Justice, and
also contained copies of his photographs, the various criminal judgments rendered against
him, and his fingerprints.

 To prove Stewart's prior convictions, the State called a crime scene technician who
reviewed the pen packets and took Stewart's fingerprints. The State's expert testified that
she made fingerprint cards of Stewart's fingerprints and compared Stewart's prints to the
ones contained in the three pen packets that had been introduced into evidence. The expert
testified that the pen packets contained Stewart's fingerprints. She also identified Stewart's
photographs that were contained in the three pen packets. 

 We conclude that the trial court did not err in admitting the pen packets, as the State
established beyond a reasonable doubt that Stewart was the same person previously convicted
as alleged in the indictment's enhancement paragraphs. See Flowers, 220 S.W.3d at 921. 
Issue two is overruled.

 Accordingly, as we have overruled Stewart's two issues, we affirm the trial court's
judgment.

 AFFIRMED.

 _____________________________

 HOLLIS HORTON

 Justice



Submitted on August 14, 2009

Opinion Delivered August 26, 2009

Do Not Publish


Before McKeithen, C.J., Kreger and Horton, JJ.
1. According to LeBleu, buccal swabs are scrapings taken from inside the mouth, and
SANE nurses collect the scrapings to obtain DNA samples. 
2. Angela Dillahunty, one of the SANE nurses who examined the child, testified that
they collected certain clothing items from the child-a pair of panties, a bathing suit, and a
skirt.