**Petition for Writ of Mandamus Denied and Memorandum Opinion filed March 28, 2013.**



In The

# Fourteenth Court of Appeals

---

NO. 14-13-00127-CV

---

## IN RE ROBERT R. MCDANIEL, AVIS LLOYD McCRARY, JOSHUA C. BROWN, PREFERRED UNLIMITED, INC., PREFERRED SANDS HOLDING CO., LLC, PREFERRED RESIN HOLDING CO., LLC, PREFERRED TECHNOLOGY, LLC, and PREFERRED PROPPANTS, LLC, Relators

---

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**On Appeal from the 234th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2011-51663**

---

## MEMORANDUM OPINION

Relators, Robert R. McDaniel, Avis Lloyd McCrary, Joshua C. Brown, Preferred Unlimited, Inc., Preferred Sands Holding Co., LLC, Preferred Resin Holding Co., LLC, Preferred Technology, LLC, and Preferred Proppants, LLC, filed a petition for writ of mandamus in this court. *See* Tex. Gov't Code §22.221;

*see also* Tex. R. App. P. 52. In the petition, relators ask this court to compel the Honorable Wesley Ward, presiding judge of the 234th District Court of Harris County, to set aside the order refusing to compel discovery of chemical tests performed a third party, finding the tests constitute the attorney work product of the real party in interest, Momentive Specialty Chemicals, Inc.[1]

Preferred Sands mines proppant sands used in "fracking" in the oil & gas industry.[2] The individual relators are former Momentive employees who later worked for Preferred Sands. Momentive filed suit alleging misappropriation of trade secrets and other business tort claims, claiming that Preferred had gained proprietary trade secret information from these former employees and planned to market its new resin-coated sand in direct competition with Momentive. The other companies named as relators are affiliates of Preferred Sands who intervened in the suit, alleging that Momentive had tortiously interfered with their business relations.

The tests at issue are chemical tests performed by a third party, Polyhedron Laboratories, Inc., on behalf of Momentive. Relators allege that the tests compare Momentive's resin-coated sand with those of Preferred Proppants, one of the relators. Momentive counters that the tests were of Preferred's products that it obtained from samples at a trade show.

---

[1] The former judge of the 234th District Court, the Honorable Reece Rondon, ruled that the tests at issue constitute Momentive's attorney work product. Judge Rondon subsequently resigned from the bench. After Judge Ward was appointed to the 234th District Court, he denied relators' request to reconsider Judge Rondon's ruling. Therefore, we need not abate this proceeding pursuant to Rule 7.2 of the Texas Rules of Appellate Procedure. *See* Tex. R. App. P. 7.2(b) (requiring abatement of original proceedings to allow successor judge to reconsider decision of previous judge).

[2] According to the pleadings filed below, the "fracking" process uses pressure to fracture rock formations to improve the flow of hydrocarbons. "Frac sand" is injected into a well to release the hydrocarbons. Sand, fluids, and other materials used to keep the fracture propped open after the pressure is removed are referred to as "proppants." Resin-coated sands are specially engineered proppants designed to be strong and highly conductive.

Relators moved to compel production of the tests and completion of the depositions of two Mementive witnesses who disclosed the existence of the tests.[3] At the hearing on the motion to compel discovery, Momentive argued that the tests are "non-core work product." It asserted that the tests were performed after this lawsuit was filed for use by its counsel. Momentive's counsel expressly stated that no expert had reviewed the tests at issue. In addition, Momentive made clear to the court that the tests are of Preferred's products only, and it argued that Preferred may easily test its own products, if necessary. The tests were reviewed by the trial court *in camera*.[4] The trial court agreed with Momentive and denied the requested discovery of the tests and analyses. The order permitted completion of the depositions of the two Momentum witnesses.

Relators then filed this proceeding, claiming the tests are not work product, or alternatively, asserting that they have a substantial need for the tests to defend against Momentive's claims and to proceed with their counterclaims. They assert that new tests performed by a different party would not be the same as those at issue and would not show Momentive's "contemporaneous thinking" or knowledge. Relators also complain that production of the tests is necessary for the completion of the two Momentive depositions.

Relators raise two issues. They assert that the trial court abused its discretion in declaring that the tests at issue constitute Momentive's attorney work product. They also assert that they lack an adequate remedy by appeal for this clear abuse of discretion.

---

[3] The depositions of the witnesses, Jerry Borges, Vice President of Momentive's Oilfield Technology Group, and Scott Spillars, Momentive's Proppant Technology Manager, are not included in our record as they are subject to the parties' protective order.

[4] The tests at issue have not been provided to this court for review.

When the trial court disallows discovery and the missing discovery cannot be made part of the appellate record, thereby precluding appellate review, mandamus is a proper remedy. *Walker v. Packer*, 827 S.W.2d 833, 843 (Tex. 1992). Where the party's ability to present a viable claim or defense is vitiated or severely compromised, an appellate remedy may be inadequate. *See id.*

Discovery generally is permitted regarding any unprivileged information relevant to the subject of a lawsuit. Tex. R. Civ. P. 192.3(a). The scope of discovery is a matter of trial court discretion. *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003). An assertion that material or information is work product is an assertion of privilege. Tex.R. Civ. P. 192.5(d). The primary purpose of the work product rule is to shelter an attorney's mental processes, conclusions, and legal theories so the lawyer can analyze and prepare his or her case. *In re Bexar Cnty. Crim. Dist. Attorney's Office*, 224 S.W.3d 182, 186 (Tex. 2007).

In addition to communications made in anticipation of litigation, which are not at issue here,[5] "work product" is defined as "material prepared or mental impressions developed in anticipation of litigation or for trial by or for a party or a party's representatives, including the party's attorneys, consultants, sureties, indemnitors, insurers, employees, or agents." Tex. R. Civ. P. 192.5(a)(1). "Core work product" concerns an attorney's mental processes and is not discoverable. *See* Tex. R. Civ. P. 192.5(b)(1). "Other" or "non-core" work product "is discoverable only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the material by other means." *Id.* at 192.5(b)(2).

---

[5] Relators expressly state that they are not seeking in this proceeding to compel discovery of emails between Momentive personnel about the tests.

A party is entitled to discovery of all documents, physical models, reports, compilations of data, or other material provided to, reviewed by, or prepared by or for a retained testifying expert. Tex. R. Civ. P. 192.3(e)(6). [6] A party is entitled to obtain the same information about a consulting expert whose work was reviewed by a testifying expert. *Id.* The policy behind the consulting expert privilege is to encourage parties to seek expert advice in evaluating their case and to prevent a party from receiving undue benefit from an adversary's efforts and diligence. *Werner v. Miller*, 579 S.W.2d 455, 456 (Tex. 1979); *see also General Motors Corp. v. Gayle,* 924 S.W.2d 222, 231 (Tex. App.—Houston [14th Dist.] 1996, orig. proceeding) (holding that disclosure of tests to the opposing party would defeat fundamental policy reasons for exempting consulting experts from discovery). According to the rule's express language, there is no work-product protection for a testifying expert's data, tests, reports, or opinions. *See* Tex. R. Civ. P. 192.3(e)(6). Thus, in this case, the test data is discoverable once it has been reviewed by a

---

[6] Rule 192.3(e) provides:

Testifying and Consulting Experts. The identity, mental impressions, and opinions of a consulting expert whose mental impressions and opinions have not been reviewed by a testifying expert are not discoverable. A party may discover the following information regarding a testifying expert or regarding a consulting expert whose mental impressions or opinions have been reviewed by a testifying expert:

> (1) the expert's name, address, and telephone number;
> (2) the subject matter on which a testifying expert will testify;
> (3) the facts known by the expert that relate to or form the basis of the expert's mental impressions and opinions formed or made in connection with the case in which the discovery is sought, regardless of when and how the factual information was acquired;
> (4) the expert's mental impressions and opinions formed or made in connection with the case in which discovery is sought, and any methods used to derive them;
> (5) any bias of the witness;
> (6) all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of a testifying expert's testimony;
> (7) the expert's current resume and bibliography.

Tex .R. Civ. P. 192.3(e).

testifying expert. Relators have not identified any evidence in the record showing that test data was reviewed by a testifying expert, however.

Relators assert that data created by a third party cannot be considered attorney work product. Relators have construed the rule too restrictively. Rule 192.5 broadly defines work product as material prepared in anticipation of litigation or for trial. *See* Tex .R. Civ. P. 192.5(a)(1). The work product exemption extends both to documents actually created by the attorney and memoranda, reports, notes, or summaries prepared by other individuals for the attorney's use. *Small*, 346 S.W.3d at 668; *GAF Corp. v. Caldwell*, 839 S.W.2d 149, 151 (Tex. App.—Houston [14th Dist.] 1992, orig. proceeding).

As authority for their narrow reading of the work product privilege, relators cite to a criminal case, *Pope v. State*, 207 S.W.3d 352 (Tex. Crim. App. 2006). Contrary to relators' argument, *Pope* acknowledged that reports prepared in anticipation of litigation have a qualified protection from discovery. *Id.* at 358. The court stated that the work product doctrine "is premised on the notion that an attorney should not be compelled to disclose the fruits of his labor to his adversary." *Id.* In addressing communications between attorneys and parties, the court recognized that underlying factual information, such as descriptions of potential witnesses, is not protected. *Id.* The court's holding in *Pope*, however, does not control the issue presented here. *See id.* at 366 (holding testimony that defense expert had not requested additional DNA testing did not violate the work product doctrine).

Relators also cite to *Axelson, Inc v. McIlhany,* 798 S.W.2d 550 (Tex. 1990). In *Axelson,* the court addressed experts who serve in the dual capacity of both fact witnesses who participated in the events material to the lawsuit and consulting experts. *Id.* at 554. The court noted that the work product privilege protects mental

impressions and opinions, but not the facts. *Id.; see also Leede Oil & Gas, Inc. v. McCorkle,* 789 S.W.2d 686, 687 (Tex. App.—Houston [1st Dist.] 1990, orig. proceeding) (denying mandamus relief from order requiring production of redacted documents containing attorney's neutral recitation of facts in notes from interview with dual fact and expert witness who died before being deposed).

The situation in this case is much different; discovery is not sought from a fact witness who participated in events leading to the lawsuit. The record shows that the tests were performed on relators' products for use by Momentive's counsel after suit was filed. According to Momentive's affidavit in our record, the tests were performed in October through December of 2011, after Momentive filed the underlying suit on August 30, 2011. The "facts" in the test data were generated after the incidents giving rise to the underlying lawsuit. Contrary to relators' assertion, the facts in the tests do not "comprise the factual bases of Momentive's case." *See* Tex. R. Civ. P. 192.3(j) ("A party may obtain discovery of any other party's legal contentions and the factual bases for those contentions."). Polyhedron has no firsthand knowledge of the underlying facts that form the basis of the lawsuit. Momentive argued to the trial court that relators may have their own analyses of their products performed and obtain the substantial equivalent of the test results by other means.

The tests at issue fall under the "non-core" or "other" work product category. *See* Tex. R. Civ. P. 192.5(b)(2). Momentive stated at the hearing and in its responsive documents that the tests have not been reviewed by a testifying expert. Momentive assured the court and relators that if the tests are reviewed by a testifying expert, they will be produced. Thus relators have the burden to show that they have a substantial need for the materials and they are unable to obtain the

substantial equivalent of the material by other means without undue hardship. *See* Tex. R. Civ. P. 192.5(b)(2).

The party seeking discovery of non-core work product labors under a heavy burden to show both that a substantial need for the materials exists and that materials equivalent to those sought cannot be obtained without substantial hardship. *In re Small* 346 S.W.3d 657, 668 (Tex. App.—El Paso 2009, orig. proceeding). "Substantial need is not merely substantial desire." *In re Bexar Cnty.*, 224 S.W.3d at 188.

Relators have generally asserted that "they cannot adequately respond to Momentive's claims of trade secret misappropriation, nor press Relators' counter-claims, without the documents, which are solely in the possession of the Planitiff." No evidence was offered to support this conclusory statement. They assert that the tests will show "what Momentive knew through its own testing of the Preferred Intervenors' products." The trial court may have concluded that relators do not have a substantial need for results from testing performed *after* suit was filed.

Based on the record before us, we determine that relators have not established that the trial court abused its discretion in determining that the information sought is work product. Relators have not established that they have a substantial need for the materials and they are unable, without undue hardship, to obtain the substantial equivalent of the tests by other means.

In conclusion, relators have not shown that they are entitled to extraordinary relief. Accordingly, we deny relators' petition for writ of mandamus.

PER CURIAM

Panel consists of Justices Boyce, Jamison, and Donovan.