# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00175-CR

**Donovan Scott Morrow, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF MILLS COUNTY, 35TH JUDICIAL DISTRICT
### NO. 2870, THE HONORABLE STEPHEN ELLIS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

After a bench trial, the trial court found appellant Donovan Scott Morrow guilty of theft of property valued at $20,000 or more but less than $100,000 and sentenced him to ten years in the Texas Department of Criminal Justice. *See* Tex. Penal Code § 31.03(a), (e)(5). On appeal, appellant complains about what he asserts was insufficient evidence, the denial of his motion to suppress evidence, and ineffective assistance of counsel. Because the parties are familiar with the facts of the case, its procedural history, and the evidence adduced at trial, we do not recite them in this opinion except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, 47.4. Having reviewed the record, we conclude that appellant has failed to demonstrate any reversible error and affirm the trial court's judgment of conviction.

## DISCUSSION

### Sufficiency of the Evidence

The jury heard evidence that on May 4, 2011, law enforcement officials responded to the Lee Hoffpauir Superstore in Mills County, Texas because a trailer, four all-terrain vehicles, and several ATV ignition switches were reported stolen from the premises during the previous night. Later that morning, the stolen trailer was recovered from appellant in Ellis County, Texas during a routine traffic stop.[1] Inside appellant's truck, law enforcement officials found a black ski mask and a map with a route from Waxahachie to Goldthwaite highlighted. When later questioned about being in possession of the stolen trailer, appellant initially denied any knowledge of or participation in the theft from the auto dealership. However, he eventually admitted to driving to Goldthwaite in his truck with several companions, going to the dealership, driving onto the premises, hooking up the trailer to his truck, and driving it back to Waxahachie. During the interview, appellant gave several inconsistent statements about the extent of his involvement in the theft. He indicated that he was "just driving" because an acquaintance had agreed to pay him $500 to help him pick up a trailer. Yet, appellant commented that he "knew what was going to happen when [they] got there" and consequently was nervous on the drive down. He also indicated that he did not know anything about the stolen ATVs because he had "nothing to do with this except for the trailer." However, while appellant denied knowing that the ATVs were inside the trailer, he subsequently provided directions and accompanied law enforcement officials to the location where the stolen ATVs were hidden.

---

[1] Appellant's truck was impounded for the failure to maintain liability insurance; the trailer was hooked up to his truck.

2

At trial, the law enforcement officials from Mills County and Ellis County testified about their involvement in the investigation, the initial contact with appellant, the subsequent interview with him (a video recording of which was admitted into evidence), and the recovery of the stolen property. A representative from the dealership testified about the missing inventory and value of the stolen items. Finally, Charles Dobbs, appellant's co-defendant, testified about how he and appellant perpetrated the theft.[2]

Dobbs testified that approximately one month before the theft from the auto dealership, appellant approached him for help in making some money because he was behind in child support. According to Dobbs, appellant knew about Dobbs's history of thefts and thus considered him someone who could help him out in getting some money. Dobbs indicated that appellant said he was familiar with the Goldthwaite area and told him that he knew about a place where they could get some ATVs to sell. Dobbs then described how he and appellant drove down to Goldthwaite (using a map on which appellant had highlighted the route), went to the dealership, and took a trailer and four ATVs. He testified that appellant dropped him off at the dealership but returned once Dobbs broke the padlock on the gate and gained access to the dealership. Dobbs said that after appellant drove his truck inside, the two of them—both wearing ski masks because the dealership had cameras—drove the ATVs into a trailer on the property and then hooked the trailer up to appellant's truck. Dobbs testified that when they left, appellant drove into a ditch coming out of the dealership but eventually maneuvered the truck out of the ditch using four-wheel drive. They then

_____

[2] Dobbs testified pursuant to a plea bargain with the State. In exchange for his plea of guilty and agreement to testify truthfully against appellant, he was sentenced to ten years in prison.

drove back to Waxahachie to the house of one of Dobbs's friends where they dropped off the trailer with the ATVs still inside. Dobbs said that appellant then dropped him off at his home and left. On cross examination, Dobbs denied that he called appellant and recruited him to help commit this theft and denied that any others were involved.[3] He also denied that he threatened appellant in any way to keep him from talking about the offense.

At trial, appellant testified that Dobbs called him to ask him to help pick up a trailer and to use appellant's truck to do so. He said that Dobbs agreed to pay him $500 for his help. He admitted that he drove down to the dealership with Dobbs, entered the property after Dobbs used a pipe wrench (that appellant gave him) to break the padlock and open the gate, drove his truck up to the trailer, hooked it up to his truck, and left the dealership with the trailer. He testified that he did not help put the ATVs in the trailer and had no knowledge that they were inside the trailer. Appellant also denied highlighting the map recovered from his truck or wearing a ski mask while at the dealership. Appellant corroborated Dobbs's testimony about driving into a ditch upon leaving the dealership, though he indicated it was not as bad as Dobbs described. He also confirmed that they drove to Dobbs's friend's house to drop "the whole load off." He said it was at that point that he felt suspicious about what had happened and planned to call the police as soon as he was away from Dobbs. He explained that he didn't report it to the officer who pulled him over the next morning—when he instead lied about where he got the trailer and why he had it—because he "didn't

---

[3] During his interview with law enforcement officials and his testimony at trial, appellant said that someone named "Ricky" accompanied him and Dobbs.

4

know what [Dobbs] was capable of doing."[4]  Throughout his testimony, appellant maintained that he did not know a crime was being committed but just thought he was helping out an acquaintance.

In his brief, appellant essentially concedes that the evidence at trial was sufficient to demonstrate the theft of the trailer and ATVs from the dealership, as well as his participation in the events resulting in the theft.  However, in his first point of error, he challenges the sufficiency of the evidence on the issue of intent, asserting that the evidence fails to prove that he perpetrated the offense with the requisite criminal intent.

Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 313 (1979); *Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014).  When reviewing the sufficiency of the evidence to support a conviction, we consider all the evidence in the light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences therefrom, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013); *see Jackson*, 443 U.S. at 319; *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010).  We review all the evidence in the light most favorable to the verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict.  *Jackson*, 443 U.S. at 318; *see Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009).  We consider

---

[4]  The record, however, contains evidence of appellant's actions that could be construed as inconsistent with being in fear of Dobbs.  When appellant's truck and the trailer were seized and impounded during the traffic stop, appellant called Dobbs to come pick him up.  According to the testimony of both appellant and Dobbs, Dobbs then loaned appellant money to restore the liability insurance on his truck as well as to pay the impound fees.

only whether the fact finder reached a rational decision. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010) ("Our role on appeal is restricted to guarding against the rare occurrence when a factfinder does not act rationally." (quoting *Laster*, 275 S.W.3d at 518)).

Relying on his self-serving testimony at trial, appellant "contests [that] he had any conscience objective or desire to engage in any criminal activity." He highlights his belief that he was simply helping out an acquaintance for the payment of $500, his testimony that he did not put the ATVs in the trailer and did not know they were in there, and his cooperation with law enforcement officials in the recovery of the stolen ATVs. He maintains that his admissions to law enforcement should be disregarded because they were coerced and "[are] untrustworth[y] because [he] was nervous, scared, pressured and not allowed to consult an attorney during [the] interviews."[5] Appellant also argues that the evidence is insufficient because "[a] large amount" of the evidence regarding appellant's intent came from his co-defendant, Dobbs. He asserts that Dobbs's testimony was not credible because of Dobbs's own involvement in the offense, his criminal history for similar theft offenses, and his plea-bargain deal with the State.

---

[5] Appellant raises the issue concerning the voluntariness of his statements in his second point of error. However, we reject appellant's argument here that his incriminating statements to law enforcement officials "should not be used against him" in our sufficiency review as it is contrary to the well-established procedure for conducting a legal sufficiency review. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (in conducting legal sufficiency review, courts assess "all of the evidence," which includes evidence that was properly and improperly admitted); *Boston v. State*, 373 S.W.3d 832, 836 (Tex. App.—Austin 2012), *aff'd*, 410 S.W.3d 321 (Tex. Crim. App. 2013) ("In determining the legal sufficiency of the evidence, we must consider all the evidence in the record, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or the defense.") (citations omitted).

6

The fact finder is the sole judge of credibility and weight to be attached to the testimony of witnesses. *Jackson*, 443 U.S. at 319; *Temple*, 390 S.W.3d at 360. The fact finder is free to accept or reject any or all of the evidence presented by either side. *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008); *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). Further, as exclusive judge of the facts, the fact finder has full responsibility for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences therefrom. *See Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Thus, when the record supports conflicting inferences, we must presume that the trier of fact resolved any such conflicts in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326; *Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013). We do not reassess witness credibility. *Thornton v. State*, 425 S.W.3d 289, 303 (Tex. Crim. App. 2014).

Here, the record reflects a conflict in the evidence. The trial judge, as the fact finder, was free to reject any or all of the evidence presented by the defense (or the State) based on his assessment of witness credibility and was entitled to weigh and resolve the conflict in the evidence. *See Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778. We find no flaw in the judge's resolution of this conflict against appellant.

Evidence is sufficient to support a conviction when, based on the evidence and reasonable inferences therefrom, any rational fact-finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Anderson*, 416 S.W.3d at 888. Viewing the evidence in the light most favorable to the verdict, a rational fact finder could have found beyond a reasonable doubt that appellant participated in removing the trailer and ATVs from

7

the dealership with the requisite criminal intent. Therefore, the evidence is legally sufficient to support his conviction for theft of property. We overrule appellant's first point of error.

**Denial of Motion to Suppress**

On the day of trial, appellant filed a motion to suppress the video recording of his interview with law enforcement officials. At the conclusion of the suppression hearing,[6] the trial court found that appellant's statements were freely and voluntarily made and denied the motion to suppress. In his second point of error, appellant challenges the trial court's ruling.

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion, applying a bifurcated standard of review in which we give almost total deference to a trial judge's findings of historical fact and credibility determinations that are supported by the record, but review questions of law de novo. *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex. Crim. App. 2013); *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). When considering whether a statement was voluntarily made, we look to the totality of the circumstances surrounding its acquisition. *Delao v. State*, 235 S.W.3d 235, 239 (Tex. Crim. App. 2007).

Appellant first argues that his request for a lawyer was ignored and that his invocation of counsel rendered his statement involuntary. The statement that appellant asserts was an invocation of his right to counsel occurred at the beginning of the interview with Ellis County Investigator Glen Smith. Immediately after giving appellant the *Miranda* warnings, the investigator asked appellant if he wanted to talk to him. Appellant equivocated about whether he wanted to talk

---

[6] Because appellant waived a jury trial, the suppression hearing was conducted during the bench trial.

8

to the investigator. When the officer indicated that he needed a "yes or no" answer, the following exchange occurred:

> Appellant: I don't know if I need an attorney or not. Do I need one?
>
> Smith: Do you think you need one?
>
> Appellant: No, I don't.

After further discussion about whether appellant wanted to talk to him, Investigator Smith again indicated he needed a "yes or no" answer as to whether appellant wanted to talk to him:

> Smith: My question is do you want to talk to me about it (the stolen trailer)?
>
> Appellant: I'd love to.

The trial court found that appellant never unequivocally invoked his right to counsel and in fact waived his right to have counsel present on the recording and agreed to talk with the officers. We agree.

An accused has the right to have an attorney present during custodial interrogation. *Edwards v. Arizona*, 451 U.S. 477, 482 (1981); *see* U.S. Const. amends. V, XIV. Once an accused has invoked that right, police interrogation must stop until counsel has been made available or the accused himself initiates a dialogue with the police. *Edwards*, 451 U.S. at 484–85; *State v. Gobert*, 275 S.W.3d 888, 892 (Tex. Crim. App. 2009). However, not every mention of a lawyer will suffice to invoke the right to the presence of counsel during questioning. *Gobert*, 275 S.W.3d at 888; *Dinkins v. State*, 894 S.W.2d 330, 351 (Tex. Crim. App. 1995). An ambiguous or equivocal

9

statement regarding counsel does not require officers to halt the interrogation or even to seek clarification. *Davis v. United States*, 512 U.S. 452, 461–62 (1994); *Gobert*, 275 S.W.3d at 892. A suspect must articulate his desire for counsel to be present for purposes of custodial interrogation, and he must do so with sufficient clarity that a reasonable officer under the circumstances would understand it to be just that. *Davis*, 512 U.S. at 459; *Gobert*, 275 S.W.3d at 892–93; *see Lucas v. State*, 791 S.W.2d 35, 45 (Tex. Crim. App. 1989) ("The right to counsel is considered invoked where a person indicates he or she desires to speak to an attorney or have an attorney present during questioning."). Whether the particular mention of an attorney constitutes a clear invocation of the right to counsel during questioning depends on the statement itself and the totality of the surrounding circumstances. *Davis*, 512 U.S. at 459; *Gobert*, 275 S.W.3d at 892.

Here, appellant expressed uncertainty about needing a lawyer and then asked the officer if he needed one. The investigator appropriately declined to advise appellant about that decision and asked appellant if he thought he needed one. Appellant's response was that he did not think so. Appellant's expression of uncertainty and his question to the officer were not an unambiguous invocation of his right to have counsel present during questioning because a reasonable officer would not necessarily have understood such statements as a request for an attorney.[7] His question about needing a lawyer—particularly when combined with his unequivocal answer that he would "love to" talk to the investigator—did not constitute an unequivocal request to have an

---

[7] Although the standard is objective, we note that on cross examination, appellant's counsel asked Investigator Smith, "Did you believe [appellant] was asking for an attorney?" Smith replied, "No, sir. He asked me the question if I thought he needed an attorney, but I didn't give any legal advice."

10

attorney present with him during his custodial interrogation prior to questioning by the investigator. Under these circumstances, we conclude that the trial court did not abuse its discretion in finding that appellant did not unambiguously invoke his right to counsel for purposes of custodial interrogation.[8]

Appellant next argues that his "mental condition and physical condition during the interviews"—which he describes as "one of fatigue, nervousness, and scaredness"—rendered his statement involuntary. At the suppression hearing, appellant testified that when Investigator Smith began questioning him, he "felt like [he] didn't really know what was going on" because he was "nervous," was "suffering from not enough sleep," was "physically exhausted," and was taking Benadryl. However, Investigator Smith testified that appellant did not appear to be sleep deprived such that he was unable to talk to him, did not appear to not understand what was going on, and did not appear to be under the influence of Benadryl or any substance that would prevent him from understanding what was happening. Deputy Hammonds corroborated Investigator Smith's observations in his testimony. He confirmed that appellant did not appear to be sleep deprived to the point where he was unable to understand the *Miranda* warnings the deputy gave nor did appellant appear to be under the influence of Benadryl or any substance that caused him to not be able to voluntarily or knowingly waive his rights. Furthermore, the trial court was able to watch the video recording of the interview.

---

[8] We also note that appellant did not make any incriminating statements to Investigator Smith. Rather, it was only after Deputy Clint Hammonds from Mills County arrived and interviewed appellant that appellant admitted any wrongdoing. The record reflects that Deputy Hammonds again provided the *Miranda* warnings to appellant after which appellant agreed to talk to the deputy. Appellant made no mention of an attorney after again being advised of his right to counsel.

11

Based on the testimony of the officers and the video recording of the interview, the trial court made the following findings about appellant's "mental and physical condition:"

- Assuming appellant had taken Benadryl at some point, the video of the interview did not reflect that appellant "was not able to understand the questions or respond."

- Although appellant "may not have had the normal number of hours of sleep the night before," the sleep deprivation was not caused by law enforcement "nor did it affect [appellant] to the point where he was unable to communicate in a reasonable and rational way."

The testimony of both officers demonstrated that appellant was able to effectively communicate with the officers. And again, the trial court watched and listened to the recorded statement. On the video recording, appellant can be seen easily conversing with the officers, not appearing confused or disoriented. At a suppression hearing, the trial judge is the sole trier of fact and exclusive judge of credibility of the witnesses and the weight to be given to their testimony. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Accordingly, the trial court was free to disbelieve appellant's testimony and find the officers' testimony, corroborated by the video recording of the interview, to be credible.

Finally, appellant asserts that the "coercive tactics" of law enforcement "contributed to the pressure and the involuntary statements." However, the description of those tactics—"placing appellant in a closed door room, not letting him leave, confiscating his phone, and following his movements"—merely demonstrates that even though not yet formally arrested, appellant was in custody for purposes of the interrogation. The *Miranda* warnings and article 38.22 warnings, given twice here by two separate officers before appellant made any incriminating statements, address the

12

coercive nature of being in custody.[9] *See Miranda v. Arizona*, 384 U.S. 436, 458 (1966) ("Unless adequate protective devices are employed to dispel the compulsion inherent in custodial surroundings, no statement obtained from the defendant can truly be the product of his free choice."); *Herrera v. State*, 241 S.W.3d 520, 525 (Tex. Crim. App. 2007) ("The warnings set out by the United States Supreme Court in *Miranda v. Arizona* were established to safeguard an uncounseled individual's constitutional privilege against self-incrimination during custodial interrogation."). Appellant fails to point to any conduct by the law enforcement officials, other than making him feel that he was not free to leave, that were "coercive." Absent some coercive police activity, a confession is not rendered involuntary within the meaning of the Due Process Clause. *Oursbourn v. State*, 259 S.W.3d 159, 169–70 (Tex. Crim. App. 2008) ("A confession may be involuntary under the Due Process Clause only when there is police overreaching."). The record supports the trial court's findings that there was "no showing that [appellant] was in some kind of intimidated state by the actions of the officers" and that there were no coercive acts or intimidation by law enforcement.

The trial court's ultimate conclusion was that "the credible evidence showed that appellant freely and voluntarily gave the statement that he gave." The record supports this finding and refutes appellant's claims to the contrary. Viewed in the light most favorable to the trial court's ruling, the record reflects that, under the totality of the circumstances, appellant's statements were voluntarily made. *See Carter v. State*, 309 S.W.3d 31, 41–42 (Tex. Crim. App. 2010) (trial court

---

[9] In its findings, the trial court found that appellant was "effectively in custody," but also found that the officers complied with the procedural requirements for custodial interrogation.

is "sole and exclusive trier of fact and judge of the credibility of the witnesses," particularly when motion to suppress is based on voluntariness of confession) (citing *Delao*, 235 S.W.3d at 238); *Green v. State*, 934 S.W.2d 92, 98–99 (Tex. Crim. App. 1996) (in context of determining voluntariness of confession, trial court is sole factfinder and may elect to "believe or disbelieve any or all" of evidence presented at hearing on motion to suppress). Therefore, we conclude that the trial court did not abuse its discretion in denying appellant's motion to suppress. We overrule appellant's second point of error.

### Ineffective Assistance of Counsel

After appellant signed a waiver of jury trial and reached a plea agreement with the State, his case was removed from the court's jury docket and set for a plea hearing. On the date of the plea, appellant's retained counsel filed a motion to withdraw citing the existence of "a conflict" and appellant's desire to hire another attorney. At the hearing on the motion, appellant's counsel explained the reasons he sought to withdraw from representing appellant: difficulties in communicating with appellant, appellant's expressed desire to hire new counsel, and appellant's refusal to take counsel's advice. In essence, counsel described the breakdown in the attorney-client relationship that prompted him to file the motion to withdraw. In his third point of error, appellant complains that his retained counsel rendered ineffective assistance because counsel's representations to the court constituted a disclosure of privileged information in violation of the attorney-client privilege and his Sixth Amendment constitutional right to due process.

To establish ineffective assistance of counsel, an appellant must demonstrate by a preponderance of the evidence both deficient performance by counsel and prejudice suffered by the

14

defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013). The appellant must first demonstrate that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687–88; *Nava*, 415 S.W.3d at 307. The appellant must then show the existence of a reasonable probability—one sufficient to undermine confidence in the outcome—that the result of the proceeding would have been different absent counsel's deficient performance. *Strickland*, 466 U.S. at 694; *Nava*, 415 S.W.3d at 308. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Strickland*, 466 U.S. at 700; *see Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010).

Appellate review of counsel's representation is highly deferential; we must "indulge in a strong presumption that counsel's conduct was *not* deficient." *Nava*, 415 S.W.3d at 307–08; *see Strickland*, 466 U.S. at 686. To rebut that presumption, a claim of ineffective assistance must be "firmly founded in the record" and "the record must affirmatively demonstrate" the meritorious nature of the claim. *See Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012); *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Rarely will the trial record by itself be sufficient to demonstrate an ineffective-assistance claim. *Nava*, 415 S.W.3d at 308. If trial counsel has not been afforded the opportunity to explain the reasons for his conduct, we will not find him to be deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.* (quoting *Menefield*, 363 S.W.3d at 593); *Goodspeed*, 187 S.W.3d at 392.

The attorney-client privilege is an evidentiary privilege and protects against the compelled disclosure of confidential communications.[10] Tex. R. Evid. 503; *Pope v. State*, 207 S.W.3d 352, 357 (Tex. Crim. App. 2006). This privilege belongs to and protects the client. *Pope*, 207 S.W.3d at 357; *see also Austin v. State*, 934 S.W.2d 672, 673 (Tex. Crim. App. 1996) (purpose of privilege is to promote communications by protecting against fear that confidences will later be revealed). Statements and advice of the attorney are just as protected as the communications of the client. *Austin*, 934 S.W.2d at 673. Application of the attorney-client privilege depends on whether the communication sought to be protected is "confidential." *Id.*; *Williams v. State*, 417 S.W.3d 162, 185–86 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd). A communication is "confidential" if it is not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client. *Austin*, 934 S.W.2d at 674; *Williams*, 417 S.W.3d at 186. The client bears the burden of establishing the existence of the privilege. *Austin*, 934 S.W.2d at 674; *Williams*, 417 S.W.3d at 186.

We disagree with appellant's contention that counsel's representations to the court disclosed confidential communications. Appellant sought to revoke his waiver of jury trial, fire his present attorney, and delay the case in order to retain new counsel. The complained-of statements by counsel explained why appellant should be granted what he sought. In light of the fact that appellant agreed with and endorsed those representations at the hearing, we find that he has failed

___

[10] We initially observe that the complained-of comments of counsel were not offered or admitted into evidence at appellant's trial and thus were not evidentiary in nature. Rather, the comments were made in counsel's argument to the court in support of his motion to withdraw. Nevertheless, appellant asserts that counsel's comments violated this evidentiary privilege.

16

to demonstrate that any communications he made to counsel that were disclosed in the representations counsel made on his behalf were intended to be confidential—that is, appellant has failed to show that these communications were not intended to be disclosed to the court in order to secure counsel's withdrawal from representation, the revocation of appellant's wavier of jury trial, and time for appellant to obtain new counsel. Accordingly, appellant has failed to establish the existence of the attorney-client privilege as to the explanations counsel made to the court in support of his motion to withdraw. *See Sanchez v. State*, No. 14-07-01067-CR, 2009 WL 838223, at *5 (Tex. App.—Houston [14th Dist.] Mar. 31, 2009, no pet.) (mem. op., not designated for publication) ("Therefore, even if we assume that the attorney-client privilege applied to appellant and [this attorney's] relationship, we cannot say that the challenged testimony was subject to the privilege, because appellant failed to establish that the statement was intended to be confidential."). Thus, appellant has failed to demonstrate that counsel's conduct in making the representations to the trial court constituted deficient performance.

Moreover, appellant has failed to demonstrate that he suffered prejudice as a result of his retained counsel making the complained-of representations. To prove prejudice, an appellant must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[11] *Strickland*, 466 U.S. at 694; *Nava*, 415 S.W.3d at 308.

---

[11] In his brief, appellant argues that counsel's purported violation of the attorney-client privilege violated appellant's Sixth Amendment right to due process and thus constitutes constitutional error under the Texas Rules of Appellate Procedure. *See* Tex. R. App. P. 44.2(a). He further maintains that if the attorney-client privilege is not a constitutionally protected right, then counsel's conduct constitutes non-constitutional error requiring reversal. *See* Tex. R. App. P. 44.2(b). However, the prejudice prong under *Strickland* is distinct from a harm analysis to determine whether trial court error warrants reversal.

17

A "reasonable probability" is one that is "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Nava*, 415 S.W.3d at 308.

In his brief, appellant summarily asserts that "[p]rejudice is shown by the fact [that] Appellant, as suggested by Counsel, was convicted and sentenced to the maximum ten year sentence, the worst possible result and sentence before the Court." This conclusory argument fails to satisfy appellant's burden under *Strickland's* prejudice prong.

Moreover, appellant's assertion does not accurately reflect the record. Contrary to appellant's contention, his counsel did not suggest that appellant should be convicted and sentenced to the maximum. Rather, in explaining the breakdown in the attorney-client relationship, counsel expressed his concerns that *if* appellant should get ten years, "[appellant] is going to say it was all [counsel's] fault." He did not suggest that appellant should receive a ten-year sentence. Furthermore, the record demonstrates that at sentencing, the State specifically argued for a ten-year sentence based on the fact that Dobbs, appellant's co-defendant, was sentenced to ten years. When assessing the sentence, the trial court stated that it found "based on the totality of the evidence, [appellant's] prior convictions, the credible testimony at both the guilt-innocence phase as well as the punishment phase, that the appropriate judgment in this case is 10 years['] confinement . . . in the Institutional Division of the Texas Department of Criminal Justice." Thus, the record does not support appellant's contention that the trial court sentenced him to the maximum sentence because of any comments made by counsel.

On the record before us, appellant has failed to demonstrate deficient performance on the part of his trial counsel or that he suffered prejudice because of counsel's representations to

18

the court. He has failed to show that his retained counsel disclosed confidential information in violation of the attorney-client privilege. Further, appellant has failed to show a reasonable probability that but for trial counsel's representations to the trial court in support of his motion to withdraw, appellant would not have been convicted or his sentence would have been different. Thus, appellant has not shown himself entitled to reversal based on ineffective assistance of counsel. Accordingly, we overrule appellant's third point of error.

## CONCLUSION

We conclude that the evidence is sufficient to support appellant's conviction, the trial court did not abuse its discretion in denying appellant's motion to suppress, and appellant failed to demonstrate that retained counsel rendered ineffective assistance. Accordingly, we affirm the trial court's judgment of conviction.

_____

Cindy Olson Bourland, Justice

Before Chief Justice Rose, Justices Pemberton and Bourland

Affirmed

Filed: March 13, 2015

Do Not Publish