

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| KI CHUL HA, | § | No. 08-16-00161-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | 205th District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20140D05012) |
| | § | |

## **O P I N I O N**

In a two-count indictment, the State of Texas charged Appellant Ki Chul Ha with misapplication of fiduciary property and theft.[1]   Following a trial, a jury convicted Appellant on both counts.   On appeal, Appellant challenges the trial court's territorial jurisdiction and its denial of his motion for mistrial claiming a violation of his privilege against self-incrimination.   We affirm.

### **BACKGROUND**

Primitivo Ortega and his wife Nancy lived in Hobbs, New Mexico, where they raised their

---

[1] *See* TEX. PENAL CODE ANN. § 32.45(b) (West Supp. 2017) (Misapplication of Fiduciary Property) and TEX. PENAL CODE ANN. § 31.03(a) (West Supp. 2017) (Theft).

children while operating a variety of small businesses they created over the course of a twenty-five-year time span. Over the years, they opened and closed nearly five businesses that primarily sold clothing and small electronics at flea markets and roadside locations. Most recently, they operated a small business called Auto 2000 that sold tires and wheels.

After a short time in business, the Ortegas decided they needed the services of an accountant. About 1996, Primitivo Ortega sought a recommendation from Mr. Wong, his friend who owned Texas Boombox, a business located in El Paso, Texas, that he frequently visited. Mr. Wong recommended Appellant, who he described as his brother-in-law who was a certified public accountant (CPA). Mr. Wong used the name "Mateo" when introducing Appellant. Primitivo first met Appellant at Texas Boombox during one of his regular visits. Their second meeting took place at Appellant's office on Montana Street in El Paso. Primitivo Ortega asked Appellant whether he could assist him with preparing tax filings for the businesses he and his wife then operated. Appellant agreed and told him he was a certified accountant and could provide those services. He also gave him a business card with the following three lines appearing above an El Paso address and phone number: "Amex Accounting & Tax Consultants Group," "Certified Public Accountants," "Mateo K. Ha."

From 1996 to 2013, the Ortegas engaged Appellant's services to assist in the preparation of their New Mexico and federal tax reporting for two businesses they were then operating. The state filing for New Mexico sales taxes required both monthly reporting and an annual return. The federal return was filed annually. For reporting of state sales taxes, the Ortegas agreed they would pay Appellant a monthly fee for his accounting services. As for preparation of annual returns, they agreed they would pay $200 for the state reporting and $1,000 for federal income tax

2

reporting. For payment of fees and taxes owed, the Ortegas provided Appellant with signed, but blank business checks, and allowed him to fill in the amount and payee after he completed, then filed, required returns. Primitivo met with Appellant at the Texas Boombox location, on a monthly basis more or less, and provided him with the latest bank statement and a few checks for use by Appellant in preparing and paying for taxes that were soon due. Primitivo expressed that he trusted Appellant and felt they had a friendly relationship.

In February 2013, however, the Ortegas' relationship with Appellant soured after Nancy Ortega discovered he had cashed two checks for $3,000 each, payable to himself, without their authorization. When Primitivo Ortega called Appellant to confront him, he said he had somebody on the other line, disconnected the call, and never called back. Although Primitivo called Appellant another forty to sixty times, he could never reach him.

Following discovery of the discrepancy, Nancy Ortega then contacted the New Mexico Taxation Department to inquire whether her accounts were then current as to taxes owed for their businesses. She then discovered that Appellant had not sent payment for state sales taxes associated with their businesses from 2007 through 2013. Eventually, the Ortegas paid the State of New Mexico approximately $134,000 in unpaid taxes. At trial, Nancy Ortega identified copies of thirty-seven checks made payable to Appellant on their business account from August 2007 through February 2013 for accounting services performed to prepare state sales tax returns. The Ortegas contended Appellant was not entitled to these payments as he had misrepresented his work and did not perform any services. Although Appellant prepared federal tax reporting, he did not perform services for New Mexico sales tax reporting.

Eventually, the Ortegas contacted law enforcement and met with Detective Nicole Ramm

3

of the El Paso Police Department. Detective Ramm, who is trained and certified as a fraud examiner, investigated the matter and later testified at trial about her work on the Ortegas' complaint. The Ortegas claimed that Appellant cashed checks he made payable to himself for services he did not perform and failed to pay their New Mexico sales taxes from August 2007 to February 2013. Detective Ramm reviewed bank records, including checks and deposits, business records, and contacted the New Mexico Taxation and Revenue office. At trial, she testified that Appellant was not listed as a licensed CPA by the Texas Board of Accountancy. Based on her investigation, Ramm identified thirty-seven checks that Appellant cashed or deposited into one of his own accounts although he did not perform related services. Before concluding her work, Detective Ramm and her partner met with Appellant in a recorded session. Towards the end of their meeting, Ramm gave Appellant one week to bring records to support his services before she submitted the case to the District Attorney's office. Although Appellant explained he had performed accounting and consulting work for the Ortegas, he did not produce any supporting documents.

At a motion in limine hearing held after the jury was impaneled but before presentment of the indictment at trial, Appellant argued that his recorded statement included comments by Detective Ramm that created an impermissible inference that the burden of proof fell on Appellant to produce evidence in his defense. The trial court agreed with Appellant and stated that it would not allow that portion of the video to be played for the jury because of the potential to cause confusion. The trial court clarified, however, that it would allow the State to describe its investigation including testimony from the detective that Appellant had been given an opportunity to provide documents but he did not do so.

During trial, Appellant's counsel followed the State's presentation of direct testimony with a cross-examination that further questioned Detective Ramm about her investigation. Among a series of questions, counsel questioned Ramm not only about her having issued a subpoena to obtain bank records, but also about her asking Appellant "to gather up documents that he may have that bookkeepers keep on their clients." In response, Ramm testified she had asked Appellant for his records. On redirect, the State further questioned Detective Ramm about her meeting with Appellant. When asked to describe the purpose of the meeting, Ramm replied, "[t]o go over – for him to provide any explanation for the records that I had obtained."

Before Ramm responded to being asked whether Appellant provided any explanation, Appellant's counsel objected on the grounds that the question inferred an improper burden-shift onto Appellant to provide an explanation. Although noting counsel's concerns with a Fifth Amendment violation, the trial court overruled the objection and reminded the State to limit the scope of the inquiry consistent with his earlier ruling. When asked whether Appellant produced documentation that would support his explanation for receiving payments, Ramm testified he did not provide documentation. Shortly afterward, Appellant's counsel moved for a mistrial arguing that Detective Ramm's testimony created an impermissible inference that Appellant had the burden to produce documentation to refute the State's allegations. The trial court denied Appellant's motion. Shortly thereafter, the State played a redacted version of Appellant's interview with Detective Ramm and her partner excluding questioning about Appellant being advised he had one week to bring in records to support his charges for services. Afterward, Appellant's counsel cross-examined Detective Ramm further and elicited testimony from her admitting that Appellant did not have any burden to produce anything.

5

The jury found Appellant guilty of misapplication of fiduciary duty and theft. Appellant filed a motion for a judgment notwithstanding the verdict asserting the evidence was insufficient to establish the trial court's jurisdiction over the case. The trial court denied his motion. Before the punishment phase began, Appellant reached an agreement with the State on a recommended punishment. The trial court then accepted the State's recommendation and sentenced Appellant to nine years' imprisonment, probated for nine years, and further ordered that Appellant pay restitution in the amount of $42,200, perform community service hours, and attend theft counseling.

## ISSUES

Appellant raises two issues on appeal of his conviction. First, he argues there is legally insufficient evidence to establish the trial court's territorial jurisdiction. Second, he argues that Detective Ramm's testimony at trial created an impermissible inference shifting the burden to produce evidence in violation of Appellant's privilege against self-incrimination. Each issue will be discussed in turn.

## TERRITORIAL JURISDICTION

In his first issue, Appellant argues that the evidence was insufficient to establish the territorial jurisdiction of the trial court. In a legal sufficiency review, we consider whether any rational jury could have found each element of the charged offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex.Crim.App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). We review all record evidence—direct or circumstantial, properly admitted or not. *Dawkins v. State*, --S.W.3d--, 2016 WL 5957311, at *7 (Tex. App.—El Paso Oct. 14, 2016, no pet.) (citing *Clayton v. State*, 235 S.W.3d 772, 778

6

(Tex.Crim.App. 2007)). We do not substitute our judgment for that of the fact finder, and we recognize that the jury may "use common sense and apply common knowledge, observation, and experience gained in ordinary affairs when drawing inferences from the evidence." *Acosta v. State*, 429 S.W.3d 621, 625 (Tex.Crim.App. 2014); *Dawkins*, 2016 WL 5957311, at *7. We may reverse a conviction when the State has failed to prove an essential element of the offense as a matter of law and no reasonable person could convict in light of the evidence as a whole, even when viewed most favorably to the prosecution. *Dawkins*, 2016 WL 5957311, at *7.

Pursuant to Texas Penal Code Section 1.04(a)(1), the State of Texas has territorial jurisdiction over an offense if either the conduct or result that is an element of the offense occurs within the borders of the state. *See* TEX. PENAL CODE ANN. § 1.04(a)(1) (West 2011). Although jurisdiction may be established by circumstantial evidence, *see Torres v. State*, 141 S.W.3d 645, 654 (Tex. App.—El Paso 2004, pet. ref'd), the Texas Court of Criminal Appeals has yet to expressly state whether the standard of proof requires proof beyond a reasonable doubt or by a preponderance of the evidence. *See Torres*, 141 S.W.3d at 653–54; *see also Horan v. State*, No. 08-07-00222-CR, 2009 WL 2951918, at *3 (Tex. App.—El Paso Sep. 16, 2009, no pet.) (not designated for publication). Regardless, we believe the evidence in the record was legally sufficient to establish the territorial jurisdiction of Texas by proof beyond a reasonable doubt over both of the charged offenses.

Appellant was charged with two offenses: misapplication of fiduciary property and theft. A person commits the offense of misapplication of fiduciary property when he intentionally, knowingly, or recklessly misapplies property he holds as a fiduciary or property of a financial institution in a manner that involves substantial risk of loss to the owner of the property or to a

7

person for whose benefit the property is held. TEX. PENAL CODE ANN. § 32.45(b). A "fiduciary" includes any person acting in a fiduciary capacity or an officer, manager, employee, or agent carrying on fiduciary functions on behalf of a fiduciary. *See id.* § 32.45(a)(1)(C), (D). "Misapply" means to deal with property contrary to an agreement under which the fiduciary holds the property. *See id.* § 32.45(a)(2)(A).

Here, when the evidence is viewed in the light most favorable to the verdict, the jury could have reasonably concluded that Appellant formed the intent to commit the offense and did in fact commit the act of misapplication while in El Paso, Texas, thus fulfilling those elements of the offense and establishing Texas's jurisdiction over the charge. *See* TEX. PENAL CODE ANN. § 1.04(a)(1) (Texas has jurisdiction over an offense if the conduct or result that is an element of the offense occurs inside this state). The evidence showed that (1) as an owner of more than one business with his wife Nancy, Primitivo Ortega entered into a fiduciary relationship with Appellant in El Paso County, Texas; (2) during his meeting with Appellant at his El Paso office, Appellant falsely represented he held a license as a CPA; (3) Appellant received bank statements and signed-but-blank checks from the Ortegas in El Paso, which he later negotiated to himself; and (4) the State introduced bank account applications by Appellant which were made in bank branches located in El Paso County, Texas. Based on the evidence, the jury was free to make the common-sense inferences that Appellant formed the intent to commit the offense when he misrepresented his status as a CPA while in El Paso County, Texas, to get himself hired by the Ortegas in a fiduciary capacity, and that while acting in a fiduciary capacity, he misappropriated fiduciary property when he wrote checks to himself for services not performed while located in El Paso County, Texas, and then deposited the checks at banks also located in El Paso County, Texas.

8

Thus, the jury could have rationally concluded that at least two elements of the offense of misapplication of fiduciary property were committed while in El Paso County, Texas, establishing the trial court's jurisdiction as to this offense.

Likewise, the evidence was sufficient to establish that Appellant committed theft while in El Paso County, Texas. A person commits theft if he unlawfully appropriates property with the intent to deprive the owner of the property. TEX. PENAL CODE ANN. § 31.03(a). Again, Appellant received blank checks from the Ortegas either at his home or at the Texas Boombox, and he maintained an office and bank accounts, and all locations are in El Paso County, Texas. The jury was free to make the inference that he wrote checks to himself while at one or more of these locations thereby establishing both intent and the unlawful appropriation elements of the offense in the territorial jurisdiction of the state. *See Horan*, 2009 WL 2951918, at *3 (a defendant's intent and act of appropriation were established where a victim's bank statements were mailed to the defendant's El Paso, Texas address).

Thus, the record is sufficient to allow a jury to rationally conclude that Appellant committed at least one of the elements of both charged offenses while in El Paso County, Texas, thereby establishing the trial court's jurisdiction. The trial court did not err in denying Appellant's motion for a directed verdict.

Appellant's first issue is overruled.

## PRODUCTION OF EVIDENCE

In his second issue, Appellant argues that Detective Ramm's testimony describing Appellant's failure to provide documentation supporting performance of services—despite having been given an opportunity to do so—created an impermissible inference that he had a burden to

produce evidence in his defense. A trial court's decision to admit evidence is reviewed for abuse of discretion. *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex.Crim.App. 2006). We will affirm the trial court's decision unless it was unreasonable, arbitrary, or without reference to any guiding rules or principles, and fell out of the zone of reasonable disagreement. *Id*.; *State v. Arizmendi*, 519 S.W.3d 143, 165 (Tex.Crim.App. 2017). A trial court's ruling should be upheld if it is reasonably supported by the record and correct under any applicable theory of law. *Ramos v. State*, 245 S.W.3d 410, 418 (Tex.Crim.App. 2008). The trial court's refusal to grant a mistrial is also reviewed for abuse of discretion. *Archie v. State*, 221 S.W.3d 695, 699 (Tex.Crim.App. 2007).

The Fifth Amendment of the U.S. Constitution protects the right of an accused from being compelled to be a witness against himself. U.S. CONST. amend. V. Accordingly, the burden of proof in a criminal case is placed on the State to prove each element of the charged offense beyond a reasonable doubt, and attempts to shift that burden to the defendant may constitute a violation of the due process clause of the Fourteenth Amendment. *See* TEX. PENAL CODE ANN. § 2.01 (West 2011); *Lowry v. State*, 692 S.W.2d 86, 87 (Tex.Crim.App. 1985, en banc) (citing *Mullaney v. Wilbur*, 421 U.S. 684, 702, 95 S.Ct. 1881, 1891, 44 L.Ed.2d 508 (1975)). Nevertheless, the State may comment on the defendant's failure to produce witnesses or evidence, but only if it does so in a manner that does not amount to a comment on the defendant's decision not to testify. *See*, *e.g.*, *Pope v. State*, 207 S.W.3d 352, 365 (Tex.Crim.App. 2006); *Jackson v. State*, 17 S.W.3d 664, 674 (Tex.Crim.App. 2000). *Pope*, *Jackson*, and other associated cases, stand for the proposition that jury arguments pointing out that the defendant has not produced evidence in his favor does not shift the burden of proof, but rather only summarizes the state of the evidence and therefore

10

constitutes proper jury argument. *See Pope*, 207 S.W.3d at 365 (the State allowed to comment on defense not calling its designated expert); *Jackson*, 17 S.W.3d at 674 (prosecutor's reference to the defense's failure to produce expert testimony was not improper).

Here, we are faced with a somewhat different situation from *Pope* and *Jackson*. Appellant argues not that the State made a comment during jury argument, but that the State elicited testimony from Detective Ramm that Appellant failed to produce evidence supporting his deposits, and thus, by inference, suggesting he had an obligation to produce documents in his defense. This case is therefore more analogous to *Orellana v. State*, 381 S.W.3d 645 (Tex. App.—San Antonio 2012, pet. ref'd). There, the State questioned a crime scene investigator about whether blood testing could have been requested by the defense. *Id*. at 654. The defendant moved for a mistrial, arguing that the officer's testimony had the effect of shifting the burden of proof from the State to the defendant. *Id*. After denying the motion, the trial court *sua sponte* instructed the jury that the defense had no burden and the entire burden of proof rested with the State. *Id*. at 654-55. Our sister court in San Antonio upheld the trial court's decision, stating that the rationale that the State may comment on a defendant's failure to produce evidence enumerated in *Pope*, *Jackson*, and other cases, also applied in the context of the State eliciting testimony from an officer that established that the defendant failed to produce evidence. *Id*. at 656. The court also stated that this kind of testimony did not constitute an impermissible shift of the burden of proof from the State to the defendant. *Id*. at 655–56. Finally, the court reasoned that even if the testimony was improper, any error was harmless because of the trial court's reminder to the jury that the State bore the burden of proof, and that because of the strength of the evidence supporting the conviction, the defendant would likely have been convicted without the statement. *Id*. at 656–57.

11

We agree with the rationale stated in *Orellana* that the State's questioning of Detective Ramm did not have the effect of impermissibly shifting the burden to Appellant to produce exculpatory evidence or prove his own innocence. Here, the State elicited testimony from Detective Ramm that she offered Appellant an opportunity to bring in any documentation that would support his explanation for receiving the disputed payments. By eliciting this testimony, Ramm described one of many steps she took in her investigation to review documentation. There was no affirmative assertion that Appellant had a duty to provide evidence in his own defense or that the burden of proof had shifted from the State. Neither did the State comment at any point on Appellant's decision not to testify. Therefore, Detective Ramm's testimony that Appellant did not produce evidence was not improper. *See Pope*, 207 S.W.3d at 365; *Jackson*, 17 S.W.3d at 674; *Orellana*, 381 S.W.3d at 655–57.

We also believe that, even if Detective Ramm's testimony was improper, any error was cured by reminders to the jury that the State, and not the Appellant, shouldered the burden of proof to produce evidence. For example, on cross-examination Detective Ramm agreed that "[Appellant] doesn't have any burden at all to produce anything[.]" Later, during testimony from the Ortegas' subsequent accountant, the trial court also told the jury that it could not "draw any inferences that [Appellant] was somehow required to produce whatever documents that he may have had in this case," and the jury nodded their heads in agreement when the trial court asked if they understood his instruction. Finally, the jury instructions themselves also reiterated the point that "[t]he law does not require a defendant to prove his innocence or produce any evidence at all," and that the burden of proof throughout the trial was "always" on the State. Thus, potential error, if any, was cured by repeated reminders to the jury that the State had the burden of proof and

12

Appellant did not have the burden to produce anything in his defense.  *See Orellana*, 381 S.W.3d at 656–57 (any potential error caused by a prosecutor's question about the failure of the defendant to produce evidence was cured by repeated reminders to the jury that the State bore the burden of proof and the defense did not have the burden to prove anything).

Because the State may comment on the defendant's failure to produce witnesses or evidence, and Detective Ramm's testimony did not amount to an impermissible comment on Appellant's decision not to testify, we conclude the State did not impermissibly shift the burden of proof onto Appellant.   Nonetheless, even if Detective Ramm made an impermissible comment, potential error was cured by the trial court's instructions that Appellant did not have the burden to produce evidence in his own defense.   Accordingly, the trial court did not abuse its discretion in allowing Detective Ramm's testimony or in denying Appellant's motion for a mistrial.

Appellant's second issue is overruled.

### CONCLUSION

Having overruled Appellant's two issues, we affirm the judgment of the trial court.


GINA M. PALAFOX, Justice

July 18, 2018

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)

13