**AFFIRMED as MODIFIED and Opinion Filed July 30, 2024**



**In The**

**Court of Appeals**

**Fifth District of Texas at Dallas**

### No. 05-23-00310-CR

**PHILLIP CALDERON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 363rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F21-45453-W**

## MEMORANDUM OPINION

Before Justices Molberg, Nowell, and Kennedy
Opinion by Justice Nowell

Appellant Phillip Calderon was indicted for murder and sentenced to seventeen years' imprisonment. Appellant challenges the sufficiency of the evidence supporting his conviction and rejecting his claim of self-defense. He also contends the trial court abused its discretion by (1) excluding his expert witness, (2) overruling his objection to an improper jury argument, and (3) excluding evidence during the punishment phase of the victim's past violence and aggression. The State requests modification of the judgment to include a deadly weapon finding. As modified, we affirm.

## Sufficiency of the Evidence

In his first and second issues, appellant challenges the sufficiency of the evidence supporting his murder conviction and rejecting his claim of self-defense. Appellant asserts he was overpowered by decedent James Wolf, a six-foot, two-inch tall, 250-pound man suffering from uncontrolled schizophrenia and under the influence of alcohol. He maintains he stabbed Wolf because Wolf was punching him and choking him with a shirt. The State responds the evidence is sufficient to support appellant's conviction because he is challenging the credibility of witnesses and the jury's resolution of conflicting evidence. To avoid redundancy, we provide a recitation of the background facts in conjunction with our sufficiency review. *See* TEX. R. APP. P. 47.1.

Appellant and Wolf lived in the same apartment complex in Richardson, Texas. Appellant lived in unit 229 and Wolf lived directly downstairs in unit 129. Although the men occasionally saw each other, they were not friends and rarely interacted.

Wolf had schizophrenia, which caused him to sometimes yell inappropriate statements to people for no reason. He struggled to stay on medication because it caused painful muscle spasms. Wolf's mother described his medication use in 2021 as "on and off," but towards the end of the year, "He was pretty unmedicated."

On May 1, 2021, around 6 p.m., appellant heard Wolf screaming and assumed he was hurt. Appellant went outside on his balcony and asked Wolf if he was okay.

–2–

Wolf yelled with clenched fists, "F you, you mother fucking wetback, I'm going to fucking kill you." Wolf also threatened to kill appellant's wife.

Neighbors heard Wolf screaming and saw him wandering around the courtyard outside his apartment. Leany Soto, who lived in unit 252, described the yelling as "very strong" with "bad words." She looked out her window and saw Wolf yelling at appellant and his wife. Soto's daughter, N.C., saw a white man (Wolf) on the bottom floor yelling profanity at a Hispanic man (appellant) on the second floor. She also saw appellant's wife.

Appellant told Wolf he was calling the police, and Wolf said he "didn't give an F, call the police." Appellant described Wolf's face as scary and unpleasant. Based on Wolf's behavior, appellant thought he was drunk or on drugs. Appellant called 911, and he testified he told the dispatcher appellant threatened him; however, the recording played for the jury did not reveal any such threat. Appellant did however say, "Come over before this guy gets hurt." He testified he did not mean anything by the statement but was upset and "running [his] mouth."

Two officers arrived at the scene at 6:40 p.m. Officer Natalie Sontz saw Wolf walking in the parking lot. He was quiet but appeared upset. He acted a little "off" because he was unable to answer the questions she asked. Officer Sontz believed Wolf was "either intoxicated or had mental illness problems." Because she did not observe any offense or believe Wolf was a danger to himself or others, she did not

make an arrest or APOWW.[1]  She told Wolf to return to his apartment and remain inside.

Appellant told Officer Sontz that Wolf was yelling in the courtyard and calling him names.  When appellant realized officers were leaving without arresting Wolf, he became increasingly frustrated because he did not believe he could say such things without the police taking action.  He felt officers "blew off" Wolf's threats.  Appellant yelled, "This dude is going to get it, y'all are going to put me in jail tonight, I swear, you might as well take me now."  He continued yelling, "This ain't over.  When y'all leave, it's going to be on.  He's not going to talk to me like that, never again.  This dude is going to get it."  Appellant testified his statements related to what Wolf was going to do, not him, and his comment about going to jail later that night was said out of frustration.  He did not really mean it.

Less than eleven minutes later, appellant killed Wolf by stabbing him fifteen times with a fishing knife.  According to appellant, the events that transpired in that brief time justified his acting in self-defense.  He testified that after officers left, he and his wife left their apartment to unload his truck, and as they walked past Wolf's window, Wolf was "banging on stuff and cussing at [him] through the window again."  When they walked back from the truck, Wolf jumped out from behind a bush, started cursing at them, and blocked the stairway.  Appellant said, "There was

---

[1] APOWW stands for "apprehension by a police officer without a warrant" and is often used when someone suffers mental illness that causes him to be a danger to himself or others.

nothing else to do but block the blow he gave." Wolf pulled appellant's shirt over his head and started "pounding" him. Wolf dragged appellant from the stairwell to the front of his apartment.

Based on Wolf's words and conduct, appellant claimed he was concerned for his safety and tried to fight back. During the fight, appellant stepped on Wolf's feet causing Wolf to fall to the ground. Appellant fell on top of Wolf, which allowed appellant to remove the shirt from his head; however, while appellant was on his stomach, Wolf was able to grab the shirt and wrap it around appellant's neck from behind while pressing down on appellant's back. He testified he suffered from asthma, which made it hard to breathe.[2] Wolf continued hitting appellant on the back of the head, calling him the "N" word, and threatening to kill him. Appellant pulled his knife from his pocket and "just poked up" as he repeatedly told Wolf to get off him. He did not know how many times he stabbed Wolf and never felt the impact of his knife into Wolf's body. The men finally separated and left in different directions. Appellant noticed a "little red spot" on Wolf's shirt. He threw the knife in the bushes and went to find his wife.

Soto and N.C. saw part of the fight from their apartment windows. About five or ten minutes after officers left the first time, Soto heard yelling. When she looked out, she saw appellant and his wife hitting Wolf. Wolf's back was on the ground,

---

[2] He also testified he suffered from Type 2 diabetes, cryptococcal meningitis, skeletal arthritis, non-detected HIV, torn rotator cuff, and spinal issues, yet he never mentioned these ailments during the investigation.

and appellant had his knees on him, straddling him, holding him down, and punching his chest. Appellant's shirt was in his right hand, and Wolf was "defenseless." She then called 911. When she later went downstairs, she saw Wolf lying in the parking lot "with the big wound."

N.C. also saw appellant and his wife on top of Wolf hitting him. At that time, appellant had on his shirt. She briefly stopped watching when Soto called 911. N.C. returned to the window and noticed appellant was no longer wearing his shirt. The men eventually broke apart, and Wolf got up and staggered away. She ran to her bedroom window and saw Wolf crunched over in pain with his hand on his stomach.

Vicki Marcuse lived in unit 128. She heard the earlier commotion outside in the courtyard, but said it was "them being noisy as usual." A short time later, she saw appellant and Wolf wrestling. She did not see the beginning of the fight, only what happened after they came around the corner from the stairwell into her patio view. She testified Wolf tripped on sidewalk bricks outside his apartment, both men fell, and appellant landed on top of Wolf. It looked like Wolf was trying to get up, but appellant continued punching him in the side. She yelled at them to stop, and they eventually separated. Wolf walked bent over towards a tree trying to catch his breath. Appellant walked away in the opposite direction. She noticed blood on Wolf's left side and then on the right side of his back.

David McLaughlin, a firefighter and paramedic, responded to the 7:22 p.m. 911 call. Wolf was lying on the ground, awake and talking, but he had a significant

stab wound to his abdomen causing his stomach and intestines to protrude outside his body. Officer Nicholas Ward also observed Wolf's abdomen injuries and saw stab wounds to Wolf's chin, the left side of his neck, and the left side of his ribs. Paramedics transported Wolf to the hospital where he underwent emergency surgery, but he died shortly after 11 p.m.

Hospital records stated Wolf suffered "cardiopulmonary failure secondary to penetrating injury to left ventricle" with preliminary cause of death as "heart failure secondary to penetrating trauma exacerbated by acute hemorrhage." The autopsy report indicated Wolf suffered fifteen injuries described as four stab wounds (when the wound is longer and deeper) and eleven incised wounds (when the wound is longer on the skin than in depth). The stab wounds were on the left side of his neck, the left lateral chest, his abdomen, and his left shoulder. The other wounds appeared on his mid-back, left forearm, left elbow, chin, abdomen, and right arm. The neck and shoulder stab wounds perforated the soft tissue and musculature. The chest stab wound pierced through tissue, musculature, and perforated the left ventricle of the heart. The abdomen stab wound, which measured four inches deep and four inches long, penetrated the stomach. He also had contusions and abrasions. Wolf's blood alcohol level measured 0.116.

Detective Sarah Yee investigated the murder. When she arrived, several officers had searched for the knife, but to no avail. She confirmed Soto, N.C, and Marcuse were the only three witnesses to the altercation.

Detective Yee later interviewed appellant, and although he admitted stabbing Wolf, he was not immediately forthcoming about the location of the knife. He eventually told her, and officers found it hidden inside a bush. Appellant said Wolf punched him, but he never said he was afraid for his life. He mentioned Wolf pulling his shirt up several times, but he never said Wolf pulled it around his mouth hindering his breath or choked him. The first time he said Wolf tried to choke him was when he testified two years after the offense.

Officer Yee filed the case as a murder without mitigating circumstances because she did not believe appellant was justified in stabbing Wolf fifteen times for a fist fight. The jury rejected appellant's claim of self-defense, found him guilty of murder, and sentenced him to seventeen years' confinement.

In reviewing the legal sufficiency of the evidence, we consider whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). A criminal conviction may be supported by both direct and circumstantial evidence as well as all reasonable inferences that may be drawn from the evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We review the evidence in the light most favorable to the verdict and defer to the factfinder to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic to ultimate facts. *Jackson*, 443 U.S. at 319; *Isassi*, 330 S.W.3d at 638. The jury may choose to believe or disbelieve any part of

any witness's testimony. *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000). "When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination." *Clayton*, 235 S.W.3d at 778.

To obtain a murder conviction, the State was required to prove beyond a reasonable doubt that appellant intentionally or knowingly caused Wolf's death, or that he intended to cause serious bodily injury and committed an act clearly dangerous to human life that caused Wolf's death. TEX. PENAL CODE ANN. § 19.02(b)(1)–(2). A person acts intentionally with respect to his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. *Id.* § 6.03(a). A person acts knowingly with respect to the result of his conduct when he is aware his conduct is reasonably certain to cause the result. *Id.* § 6.03(b). Direct evidence of the requisite intent or knowledge is not required. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002) (en banc).

When, as here, a defendant has claimed justification for stabbing the victim, our sufficiency review includes a determination of whether any rational juror could have rejected his self-defense claim beyond a reasonable doubt. *Braughton v. State*, 569 S.W.3d 592, 609 (Tex. Crim. App. 2018). To prevail on a claim of self-defense with the use of deadly force, a defendant must prove: (1) he would have been justified in using force against the other person; and (2) it was reasonable to believe that "deadly force [was] immediately necessary [for protection] against the other's

use or attempted use of unlawful deadly force." TEX. PENAL CODE ANN. § 9.32(a). A person is justified in using force against another when and to the degree that person reasonably believes the force is immediately necessary to protect himself from another's use or attempted use of unlawful force. *Id.* § 9.31(a). The use of deadly force may be justified when a person reasonably believes the deadly force is immediately necessary to protect the actor against the other's use or attempted use of unlawful deadly force. *Id.* at § 9.32 (a)(2)(A). "Deadly force" is "force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." *Id.* § 9.01(3). "Reasonable belief" means "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." *Id.* § 1.07(a)(42).

In a claim of self-defense, the defendant bears the burden to produce some evidence that supports his claim of self-defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). Once a defendant produces some evidence raising the issue of self-defense, the State bears the burden of persuasion to show beyond a reasonable doubt that the defendant's actions were not justified. *Id.* To meet its burden of persuasion, the State is not required to produce additional evidence. *Ashby v. State*, No. 05-22-00361-CR, 2024 WL 885171, at *3 (Tex. App.—Dallas Mar. 1, 2024, no pet.) (mem. op., not designated for publication). The burden of persuasion requires only that the State prove its case beyond a reasonable doubt. *Id.* If the jury finds the defendant guilty, it has made an implicit finding against any defensive

–10–

theory raised by the defendant. *Zuliani*, 97 S.W.3d at 594; *London v. State*, 325 S.W.3d 197, 202 (Tex. App.—Dallas 2008, pet. ref'd). Accordingly, when a defendant challenges the legal sufficiency of the evidence to support the jury's implicit rejection of his self-defense claim, "we look not to whether the State presented evidence which refuted appellant's self-defense testimony, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of [the offense] beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt." *Ashby*, 2024 WL 885171, at *3. We defer to the jury's assessment of the credibility of the witnesses and the weight to be given their testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010).

It is undisputed no one saw the entire fight or either man with a weapon. Instead, as detailed above, the jury heard testimony from neighbors who saw parts of the fight and appellant's self-serving testimony. No one saw Wolf attacking appellant; rather, witnesses saw appellant straddling Wolf and punching him. One witness described Wolf as "defenseless." The jury could reasonably believe appellant followed through on his threats that "This dude is going to get it," and he was going to jail that night because he was frustrated with officers for not arresting Wolf after Wolf yelled profanity at him.

–11–

Appellant admitted using a knife to "poke" Wolf; however, the extent of Wolf's injuries indicated appellant inflicted more than pokes to Wolf's body as the autopsy report revealed one stab wound pierced through the rib cage to the heart and the stab wound to his abdomen was four inches deep and four inches wide. The jury was free to reject appellant's testimony he could not see what he was doing, did not feel the impact of his knife slicing open Wolf's abdomen, and had no idea how many times he stabbed Wolf until he heard the evidence at trial. The jury could have reasonably inferred that by stabbing Wolf in such a manner, appellant went well beyond what was "immediately necessary" to defend himself, even if Wolf had been the aggressor. *See* TEX. PENAL CODE ANN. § 9.31 (limiting self-defense to degree of force that actor "reasonably believes . . . is immediately necessary to protect the actor against the other's use or attempted use of unlawful force"); *Bartley v. State,* No. 03-18-00009-CR, 2019 WL 3436989, at *4 (Tex. App.—Austin July 31, 2019, pet. ref'd) (mem. op., not designated for publication).

Moreover, the jury could have rejected appellant's claim that Wolf was the aggressor based on evidence showing that Wolf's injuries were serious and life-threatening, whereas the extent of appellant's injuries were limited to cuts on his hand from opening the knife. *See, e.g.*, *Bartley*, 2019 WL 3436989, at *4. Although appellant testified Wolf repeatedly hit his head, appellant had no visible head injuries after the altercation. The jury was free to disbelieve his testimony that the shirt around his head cushioned the blows.

Appellant conceded "poking" someone with a knife was an act clearly dangerous to human life. He admitted Wolf never had a weapon, but he had a knife. "It started as a fist fight until he put the shirt over my head and wrapped it around my neck." However, the three witnesses to the fight never saw the shirt around appellant's neck. To the extent appellant argues he conclusively proved Wolf tried to suffocate him because witnesses saw him with his shirt off, we disagree. It merely indicated appellant's shirt somehow came off.

Appellant used a knife during a fist fight against an unarmed man. The jury considered the conflicting witness accounts, and we may not substitute the jury's credibility determinations with our own. *See Brooks*, 323 S.W.3d at 899. We conclude a rational jury could have found the essential elements of the offense of murder beyond a reasonable doubt and also found against appellant on the self-defense issue beyond a reasonable doubt. *Ashby*, 2024 WL 885171, at *3. We overrule appellant's first and second issues.

**Exclusion of Expert Testimony**

In his third issue, appellant complains the trial court abused its discretion by excluding Dr. Michael Pittman's expert testimony because it was "crucial to the defense's case to convince the jury that Wolf was [the] aggressor with a prior disposition to violence due to his untreated mental condition and use of alcohol." The State responds the trial court acted within its discretion by excluding the testimony because it was not relevant.

We review a trial judge's decision to admit or exclude evidence under an abuse of discretion standard. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016). A trial court abuses its discretion when the decision falls outside the zone of reasonable disagreement. *Id.* at 83. Before a reviewing court may reverse the trial court's decision, "it must find the trial court's ruling was so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Id.*

Texas Rule of Evidence 702 states, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX. R. EVID. 702. These requirements are commonly referred to as (1) qualification, (2) reliability, and (3) relevance.

Finding a piece of evidence to be relevant is the first step in a trial court's determination of whether the evidence should be admitted before the jury. *Henley*, 493 S.W.3d at 83. Even though our rules "favor the admission of all logically relevant evidence for the jury's consideration," the trial court makes the threshold decision as to whether evidence is relevant or not, and its decision will not be disturbed on appeal unless it is "clearly wrong." *Id.*

A defendant's right to present evidence relevant to a valid justification defense should not be confused with a defendant's right to present his case-in-chief. *Id.* A defendant has the right to put on his case-in-chief but that right is not without

–14–

limitations. *Id.* The court of criminal appeals has stated, "[a] defendant has a fundamental right to present evidence of a defense as long as the evidence is relevant and is not excluded by an established evidentiary rule." *Id.* Only relevant evidence is admissible, and the trial court has the discretion to exclude irrelevant evidence. *Id.*; *see also* TEX. R. EVID. 402. Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX. R. EVID. 401.

The trial court conducted a hearing outside the presence of the jury to determine the admissibility of Dr. Pittman's testimony. He testified that he reviewed legal records from 2016 and 2020, the video of the encounter before the stabbing, and the arrest report. He also reviewed some interviews with Wolf's father. He noted Wolf was noncompliant with treatment and had alcohol in his system at the time of the offense.

Dr. Pittman opined that someone with untreated schizophrenia and alcohol use would be more prone to violence. He conceded, however, not everyone with schizophrenia or who uses alcohol is violent, and people with no mental illness can be violent. He admitted he never treated or met Wolf; therefore, he could not opine how schizophrenia or alcohol would affect him, but "just the statistical kind of approach." The trial court granted the State's motion to exclude Dr. Pittman's testimony.

–15–

The trial court acted within its discretion by granting the State's motion to exclude the testimony. Dr. Pittman never treated or met Wolf, and he could not testify how schizophrenia or alcohol impacted Wolf. Because Dr. Pittman had no personal knowledge of how these conditions may have affected Wolf, the trial court's ruling that his testimony was irrelevant was not so clearly wrong as to lie outside the zone of reasonable disagreement. *Henley*, 493 S.W.3d at 83; *see* TEX. R. EVID. 401. Appellant's third issue is overruled.

### Jury Argument

In his fifth issue, appellant argues the trial court abused its discretion by overruling his objection to the State's improper jury argument. The State responds its argument fell within the bounds of proper jury argument.

During closing, the State argued:

[Defense Counsel] wants to talk about all of these health problems that Mr. Calderon had. I brought you EMT records, hospital records, and an autopsy report. They have to back up things that they want to say with proof as well. And proof was missing. We don't know anything about any of those things.

Defense counsel objected the State was shifting the burden of proof because appellant did not have "the burden of proof to bring medical records in." The trial court overruled the objection.

The trial court's ruling on an objection to improper jury argument is reviewed for an abuse of discretion. *Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004); *Addison v. State*, No. 05-18-01263-CR, 2020 WL 4251068, at *2 (Tex.

App.—Dallas July 24, 2020, no pet.) (mem. op., not designated for publication). Proper jury argument generally falls within one of four areas: (1) summation of the evidence, (2) reasonable deductions from the evidence, (3) answers to opposing counsel's argument, and (4) a plea for law enforcement. *Addison*, 2020 WL 4251068, at *2. Even when an argument exceeds the permissible bounds of these approved areas, such will not constitute reversible error unless, in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000) (en banc). The remarks must have been a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial. *Id.*

During jury argument, the State may comment on a defendant's failure to present evidence in his favor. *Pope v. State*, 207 S.W.3d 352, 365 (Tex. Crim. App. 2006) ("a party may always comment on the fact that the opponent failed to call an available witness"); *Jackson v. State*, 17 S.W.3d 664, 674 (Tex. Crim. App. 2000). Courts have long held such comments are proper so long as the comments do not fault the defendant for exercising his right not to testify. *Pope*, 207 S.W.3d at 365; *Jackson*, 17 S.W.3d at 674; *Thomas v. State*, No. 05-14-01589-CR, 2016 WL 259761, at *7 (Tex. App.—Dallas Jan. 21, 2016, pet. ref'd) (mem. op., not designated for publication). Jury argument pointing out that the defendant has failed to present evidence in his favor does not shift the burden of proof but instead

–17–

summarizes the state of the evidence and is a reasonable deduction from the evidence. *Thomas*, 2016 WL 259761, at *7.

Here, the challenged argument was not an attempt to shift the burden of proof but, instead, constituted a proper summary of the state of the evidence. Appellant testified he suffered from multiple ailments; however, he brought forth no medical evidence supporting his claims. The State's argument was permissible and not a comment on appellant exercising his right not to testify. Accordingly, the trial court did not abuse its discretion by overruling appellant's objection to the State's jury argument. We overrule appellant's fifth issue.

### Motion in Limine Excluding Violence by Victim

In his fourth issue, appellant argues the trial court abused its discretion by granting the State's motion in limine excluding evidence during the punishment phase of Wolf's past violence and aggression. The State responds appellant failed to preserve his complaint, and even if preserved, the trial court acted within its discretion when granting the motion.

Before the punishment phase, a hearing was held to address the State's motion in limine asking the court to prohibit the defense from eliciting evidence or testimony regarding any alleged prior bad acts of Wolf. Defense responded appellant had knowledge of Wolf's prior threats and bad acts, but appellant felt the trial court restricted him from developing the evidence during guilt-innocence. The trial court granted the State's motion in limine.

A ruling on a motion in limine is not a ruling on the merits, but rather one regarding the administration of the trial. *Harnett v. State*, 38 S.W.3d 650, 655 (Tex. App.—Austin 2000, pet ref'd). It generally preserves nothing for review and requires that before a party may introduce evidence relating to a particular matter, a hearing must be held outside the presence of the jury to determine its admissibility. *Geuder v. State*, 115 S.W.3d 11, 14 (Tex. Crim. App. 2003); *Thierry v. State*, 288 S.W.3d 80, 87 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) ("It is axiomatic that motions in limine do not preserve error."). Thus, to preserve error in the exclusion of evidence, the complaining party must actually offer the evidence or a summary of the evidence and secure an adverse ruling from the court. TEX. R. EVID. 103(a)(2); TEX. R. APP. P. 33.1(a); *Armelin v. State*, No. 14-05-00680-CR, 2006 WL 2805559, at *3 (Tex. App.—Houston [14th Dist.] Oct. 3, 2006, pet. ref'd) (mem. op., not designated for publication).

The offer of proof may consist of a concise statement by counsel, or it may be in question-and-answer form. *Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009). If in the form of a statement, the proffer "must include a reasonably specific summary of the evidence offered and must state the relevance of the evidence unless the relevance is apparent, so that the court can determine whether the evidence is relevant and admissible." *Id.* The primary purpose of an offer of proof is to enable an appellate court to determine whether the exclusion was erroneous and harmful.

*Id.* A secondary purpose is to permit the trial judge to reconsider his ruling in light of the actual evidence. *Id.*

During punishment, Wolf's brother testified briefly regarding Wolf's mental illness and how difficult it was "to hear a narrative in a courtroom that villainizes people with mental health." At the close of punishment and outside the jury's presence, defense counsel argued Wolf's brother opened the door during his testimony to allow the defense to present evidence regarding how Wolf's mental illness led him to be the aggressor in the altercation. Counsel argued:

> A little bit more specifically, Judge, he specifically stated he -- he hated the way we portrayed mental illness in the courtroom, that we portrayed mental illness as a bad thing, and it gives a false impression to the jury. Our client testified that Mr. Wolf was violent. Our client testified that Mr. Wolf was aggressive. Whether that's believed or not believed, it is in evidence. It is evidence in the case. And if he said that -- and then Mr. Zach Wolf says we portrayed mental illness as a bad thing, then, again, it gives that false impression to the jury. I think we should be entitled to go into why we were presenting our evidence and what backs up our defense is the evidence that -- the previous evidence of Mr. Wolf's being aggressive.

Counsel did not present a specific summary of any acts of aggression by Wolf. He did not present an adequate offer of proof setting forth the substance of the excluded evidence so that the trial court could reconsider its ruling in light of the evidence. Further, the trial court did not actually rule on the offer of proof, but asked, "Anything further?" and defense counsel answered, "Nothing further." Because appellant did not make an offer of proof setting forth the substance of the excluded evidence and obtain an adverse ruling, his issue is not preserved for review. *See*

–20–

TEX. R. EVID. 103(a)(2); TEX. R. APP. P. 33.1; *Mays*, 285 S.W.3d at 890. We overrule his fourth issue.

## Modification of Judgment

In a cross-issue, the State requests modification of the judgment to include a deadly weapon finding as implicitly found by the jury's verdict. This Court has the power to modify an incorrect judgment to make the record speak the truth when we have the necessary information to do so. *See* TEX. R. APP. P. 43.2(b); *Estrada v. State*, 334 S.W.3d 57, 63 (Tex. App.—Dallas 2009, no pet.).

The trial court's judgment states "N/A" in the space for "Findings on Deadly Weapon." The jury made the express determination that a deadly weapon was used or exhibited during the commission of the offense because the indictment specifically alleged a "A KNIFE, a deadly weapon" was used, and appellant was found guilty "as charged in the indictment." *See Duran v. State*, 492 S.W.3d 741, 746 (Tex. Crim. App. 2016) (citing *Polk v. State*, 693 S.W.2d 391, 396 (Tex. Crim. App. 1985) (en banc)); *see also Hardge v. State*, No. 05-22-00317-CR, 2023 WL 4571918, at *8 (Tex. App.—Dallas July 18, 2023, pet. ref'd) (mem. op., not designated for publication) (modifying judgment to include deadly weapon finding). We sustain the State's cross-issue and modify the judgment to reflect a deadly weapon finding.

**Conclusion**

As modified, we affirm the trial court's judgment.

/Erin A. Nowell/
ERIN A. NOWELL
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
230310F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

PHILLIP CALDERON, Appellant

No. 05-23-00310-CR       V.

THE STATE OF TEXAS, Appellee

On Appeal from the 363rd Judicial District Court, Dallas County, Texas Trial Court Cause No. F21-45453-W. Opinion delivered by Justice Nowell. Justices Molberg and Kennedy participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

We **REMOVE** "N/A" from "Findings on Deadly Weapon" and **REPLACE** with "Yes, a Knife."

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered July 30, 2024